**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name:  14a0261n.06

Case No. 12-4201

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| | | **FILED** |
| | | Apr 07, 2014 |
| UNITED STATES OF AMERICA, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| RAYMOND M. BINNEY, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:  KEITH, COOK, and KETHLEDGE, Circuit Judges.

PER CURIAM.  Following a guilty plea, Raymond Binney appeals his conviction and 180-month sentence for receiving and distributing child pornography.  *See* 18 U.S.C. § 2252(a)(2).  He argues that the district court erred by (1) accepting his unknowing and involuntary guilty plea and (2) imposing a procedurally and substantively unreasonable sentence. We affirm.

I.

Binney used the online file-sharing program Gigatribe to exchange child pornography, and a private email account to distribute it.  Online file sharing systems allow users to download

files from the shared folder of other users' computers. *See United States v. Sawyer*, 786 F. Supp. 2d 1352, 1354 (N.D. Ohio 2011) (describing file-sharing systems). As a "closed" file-sharing network, "Gigatribe allows users to share files with other users with whom they have become 'friends' through an invitation and acceptance feature of the program." *United States v. McManus*, 734 F.3d 315, 317 (4th Cir. 2013). "A user is not able to see or access another user's files unless: 1) one user has invited the other and the other has accepted the invitation; and 2) the other user maintains a shared folder, accessible to friends, that is populated by files." *Id*. In May 2010, an undercover federal agent discovered child pornography in Binney's Gigatribe directories, apparently after Binney added the agent as a friend and maintained a shared folder accessible to the agent. Authorities later searched Binney's apartment and computer and found approximately 28,000 illegal images and 9,970 illegal videos. The search also revealed several incriminating how-to documents, including one that listed Gigatribe user names "believed" to be "actively trading child pornography." (*See* PSR ¶ 19.)

After indictment, Binney notified the district court of his intent to plead guilty. At the plea hearing, the district court asked Binney a series of questions before determining that he knowingly and voluntarily entered his guilty plea.

A probation officer then filed a presentence investigation report (PSR) calculating Binney's Sentencing Guidelines range with a five-level enhancement because Binney distributed child pornography "for the receipt, or the expectation of receipt, of a thing of value but not for pecuniary gain." U.S.S.G. § 2G2.2(b)(3)(B). Binney objected to the enhancement, but the probation officer explained in an addendum to the PSR that "the defendant admitted to receiving and distributing child pornography" and this exchange "is the reason for the adjustment."

(Addendum to PSR at 23.) Binney's total offense level of 37, combined with a Category I criminal history, yielded a sentencing range of 210 to 240 months' imprisonment.

At sentencing, Binney offered no objection to the application of the enhancement, and the court, without elaboration, adopted the PSR's calculation, sentencing Binney to 180 months—30 fewer than his guideline calculation. Then, without asking the parties whether they had any further objections to the sentence, as required by *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004), the court entered judgment. Binney's unenhanced range would have been 121 to 151 months. *See* U.S.S.G. Sentencing Table. Binney appeals.

II.

Binney attacks the validity of his plea as entered without a full understanding of import or consequences. *See United States v. Gardner*, 417 F.3d 541, 544 (6th Cir. 2005). Federal Rule of Criminal Procedure 11 "requires that a district court verify that the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *United States v. Webb*, 403 F.3d 373, 378−79 (6th Cir. 2012). We review the court's compliance with Rule 11 for only plain error where Binney raised no objection when entering his plea. *See United States v. Vonn*, 535 U.S. 55, 59 (2002). Under that plain-error standard, Binney must show that a clear or obvious error "affected [his] substantial rights," *i.e.*, motivated him to plead guilty. *See United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004); *United States v. Olano*, 507 U.S. 725, 734−35 (1993).

Plainly, the district court bypassed four of Rule 11's dictates. The government concedes that the court erred by not advising Binney of: 1) his right to maintain his not-guilty stance; 2) his right to testify and present evidence at trial; and 3) the court's obligation to calculate and consider the Sentencing Guidelines and statutory sentencing factors. *See* Fed. R. Crim. P. 11(b)(1)(B), (E), (M). (Government's Br. at 27.) Moreover, though unmentioned by the government, the district court failed to confirm the absence of any force, threats, or promises to induce Binney's plea. *See* Fed. R. Crim. P. 11(b)(2).

Nevertheless, unable to show "a reasonable probability that, but for the error[s], he would not have entered the plea," *Dominguez Benitez*, 542 U.S. at 76, Binney demonstrates no prejudice. Binney "does not even contend that he would have gone to trial under any circumstance. Absent any such argument, he simply cannot show a reasonable probability of a different outcome." *United States v. Taylor*, 627 F.3d 1012, 1019 (6th Cir. 2010).

The record bolsters this conclusion. The district court notified him of his right to a trial, implicitly informing him of his right to persist in his not-guilty plea, testify, and present evidence. (*See* R. 32, Plea Tr. at 5.) Likewise, the court explained at sentencing (in response to a request for clarification from Binney) that it must consider the Sentencing Guidelines and statutory factors. (*See* R. 33, Sentencing Tr. at 3−4.) Apparently satisfied, Binney never moved to withdraw his guilty plea. And he raises no claim that he faced any force, threat, or some sort of promise that induced him to plead guilty.

As for his two remaining challenges to the guilty plea—that the district court inadequately explained the nature of the offense under Rule 11(b)(1)(G) and failed to establish a factual basis per Rule 11(b)(3)—the arguments fail. Regarding the first, though Binney criticizes

the district court's recitation of the indictment as inadequate (*see* R. 32, Plea Tr. at 4), he ignores the fuller description of the charges later in the hearing. The judge asked Binney if he "knowingly receive[d] . . . and distribute[d] in interstate and foreign commerce numerous computer files which contained visual depictions of real minors engaged in sexually explicit conduct," and Binney answered "yes." (*Id*. at 8.) This exchange evidences his grasp of the charges he faced. *See United States v. Syal*, 963 F.2d 900, 905 (6th Cir. 1992) (requiring district courts to express only "[s]ome rehearsal of the elements").

Regarding the plea's factual basis, district courts can ensure a plea's factual basis by asking the defendant to admit to the "conduct—and mental state if necessary—that satisf[ies] every element of the offense." *United States v. Tunning*, 69 F.3d 107, 112 (6th Cir. 1995). Here, in addition to Binney's exchange with the court outlined above, he responded "[g]uilty" to the question of "how do you plead" following the judge's repeating the indictment charge. (R. 32, Plea Tr. at 10.)

Even if this court assumes arguendo that these exchanges were inadequate, a court can establish a plea's factual basis by "a statement on the record from the government prosecutors." *Id*. Binney's judge asked the prosecutor whether he wanted "to lay out any more of the factual predicate," to which the prosecutor responded with details of Binney's criminal conduct. (*Id*. at 9.) The prosecutor explained, for example, that a search of Binney's computer revealed over 28,000 images and 9,970 videos of child pornography, including bestiality and bondage. (*Id*. at 9.) These facts alone amply support the proposition that the court established a factual basis for the plea. We discern no reversible error and uphold the court's acceptance of Binney's guilty plea.

III.

Binney also appeals the sentence imposed. He correctly notes that, because the district court neglected to ask the *Bostic* question, regardless of Binney's failure to timely object, we review his sentence for abuse of discretion rather than plain error. *See United States v. Ross*, 703 F.3d 856, 883–84 (6th Cir. 2012); *Bostic*, 371 F.3d at 872. We assess the procedural and substantive reasonableness of his sentence, *see Gall v. United States*, 552 U.S. 38, 51 (2007), reviewing the district court's factual findings for clear error and legal conclusions de novo, *see United States v. Lalonde*, 509 F.3d 750, 763 (6th Cir. 2007).

Binney first contends that the district court procedurally erred by imposing a five-level enhancement for his distributing child pornography "for the receipt, or the expectation of receipt, of a thing of value but not for pecuniary gain." U.S.S.G. § 2G2.2(b)(3)(B). In support of the enhancement, the district court relied on its finding that Binney shared child pornography on the Gigatribe file-sharing website with the expectation of receiving child pornography in return. *See generally id*. § 2G2.2(b)(3)(B) cmt. n.1.

Binney's contention correctly highlights a distinction between distributing child pornography and trading it for something of value. Distribution warrants a two-level enhancement, *see* U.S.S.G. § 2G2.2(b)(3)(F), while bartering garners five levels, *see id*. § 2G2.2(b)(3)(B). "In a case involving the bartering of child pornographic material, the 'thing of value' is the child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received." *Id*. § 2G2.2(b)(3)(B) cmt. n.1.

That Binney shared child pornography on Gigatribe is not reason enough to find that he did so with the expectation of receiving child pornography in return. *See McManus*, 734 F.3d at 321; *United States v. Vadnais*, 667 F.3d 1206, 1209 (11th Cir. 2012). Instead, we examine whether there is evidence, "direct or circumstantial," that he "reasonably believed that he would receive something of value by making his child pornography files available for distribution through a peer-to-peer network." *Id.*

Though this record lacks direct evidence (such as chat logs) that Binney shared child pornography with the expectation of receiving it in return, circumstantial evidence supports the sharing-with-expectation-of-receiving assessment by the sentencing court. First, it is undisputed that Binney maintained a list of Gigatribe users willing to share child pornography— circumstantial evidence that he expected to receive child pornography from at least some of the users with whom he shared his own child pornography. True enough, the record does not specifically show that Binney traded child pornography with anyone on that list; but that just means the list is circumstantial rather than direct evidence.

Moreover, that Binney gathered the astounding number of images and videos found on his computer—making this among the worst cases the district court had ever seen—corroborates the court's finding that Binney expected to (and did) receive child pornography when he shared his own. *See United States v. Emmons*, 524 Fed. Appx. 995, 999 (6th Cir. 2013) ("The [§ 2G2.2(b)(3)(B)] enhancement does not apply merely because a defendant used a file-sharing program, but extensive use of the program resulting in several hundred images will weigh in favor of the enhancement"). In short, the district court could reasonably view the following factors as circumstantial evidence supporting the imposition of the five-level enhancement: Binney's status as a Gigatribe user, his possession of a list of "sharing" Gigatribe users, the

extensive collection of child pornography that he made available to his Gigatribe "friends," and the collection of tens of thousands of child-pornography images and videos on Binney's own computer. In the absence of a showing that the district court clearly erred when it found that Binney shared child pornography with the expectation of receiving child pornography in return, we uphold the court's application of § 2G2.2(b)(3)(B).

Binney's remaining arguments merit only brief discussion. He contends that the lack of empirical support for the 5-level enhancement should have caused the court to depart more than 30 months below the guidelines, without offering any reasoned argument tied to the abuse-of-discretion standard of review. He also challenges the substantive reasonableness of his presumed-reasonable, below-guidelines sentence because, according to him, the district judge relied too heavily on the number and nature of pornographic images distributed. We reject the challenge, especially noting the grievous nature of this case and its cache of images, viewed as "one of the worst" by the sentencing judge. (R. 33, Sentencing Tr. at 15.)

Finally, we decline to address the constitutional effectiveness of Binney's trial counsel, noting the appropriateness of adjudicating such claims with a more-developed record under 28 U.S.C. § 2255. *See Massaro v. United States*, 538 U.S. 500, 504–06 (2003).

IV.

We AFFIRM.