*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0220p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                         *Plaintiff-Appellee,*

                                                        No. 13-2496

           *v.*

RONALD EUGENE MABEE,
                         *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:13-cr-00099-1—Robert Holmes Bell, District Judge.

Decided and Filed:  September 3, 2014

Before:  GIBBONS and McKEAGUE, Circuit Judges; LAWSON,[*] District Judge.

_____

**COUNSEL**

**ON BRIEF:** Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand
Rapids, Michigan, for Appellant.  Sean M. Lewis, UNITED STATES ATTORNEY'S
OFFICE, Grand Rapids, Michigan, for Appellee.

_____

**OPINION**

_____

        DAVID M. LAWSON, District Judge.  Ronald Mabee appeals his 121-month
sentence for distribution of child pornography on the ground that the district court
misapplied U.S.S.G. § 2G2.2(b)(3)(B), which calls for a five-level enhancement to the
offense level for a defendant who distributes child pornography for "the receipt, or
expectation of receipt, of a thing of value, but not for pecuniary gain."  Mabee argues

_____

        [*]The Honorable David M. Lawson, United States District Judge for the Eastern District of
Michigan, sitting by designation.

1

that the enhancement was unjustified because the record showed only that he used a file-sharing program to download and store child pornography, and there was no evidence that he engaged in individual trading of images or videos with other persons. The government contends that Mabee waived the issue when he did not object to, and in fact agreed with, the district court's guideline calculations at the sentence hearing. We hold that although Mabee forfeited his claim by failing to object in the district court, thereby relegating the issue to plain error review, there was no waiver. We also hold that the district court could have relied on circumstantial evidence in the record that Mabee made his own computer files available because he expected to receive additional pornography from others, and therefore it did not plainly err by applying the enhancement. We affirm Mabee's sentence.

I.

Using the "ARES Peer-to-Peer (P2P) network," agents of the Department of Homeland Security investigations division downloaded child pornography images from an Internet address assigned to defendant Ronald Mabee on six different occasions between May 11, 2012 and May 30, 2012. On December 12, 2012, agents confronted Mabee at his home, and during the interview Mabee admitted that had used the ARES software to download child pornography. Later, forensic examiners of Mabee's computer recovered at least 73 images and 14 videos, as well as evidence that the defendant had "searched extensively for child pornography using the ARES program." All of the videos and one of the images had been stored in a folder named "My Shared Folder," which meant that they were available for other users of the ARES software to download from Mabee's computer.

Mabee was charged in a three-count indictment with distributing, receiving, and possessing child pornography. Mabee pleaded guilty to the distribution count; the other counts were dismissed by the government under a plea agreement. In the section devoted to the factual basis for the offense, Mabee's Rule 11 plea agreement stated that when agents confronted him at his home on December 12, 2012, Mabee admitted that "he knew that the child pornography he had downloaded using ARES, including [the

files named in the indictment] was available for download by other ARES users." As to the possible sentence, the agreement stated that "[t]he defendant and the U.S. Attorney's Office have no agreement as to the applicable Sentencing Guidelines factors or the appropriate guideline range," and "[b]oth parties reserve the right to seek any sentence within the statutory minimum and maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments and departures."

At his plea hearing, when the district court prompted him to explain why he thought that he was guilty, Mabee stated:

> MABEE: I downloaded off a program called ARES —
>
> . . .
>
> MABEE: . . . And ARES allows you to download many things, including this material, and I downloaded it and it was distributed, it was sent. It was downloaded through a file that was available to others to download, and that was last summer or last year.
>
> . . .
>
> COURT: Okay. Did you know what you were downloading?
>
> MABEE: I knew I was downloading after I saw the images, the video, yes.
>
> . . .
>
> MABEE: . . . I intentionally downloaded the files by names and I intentionally downloaded this file, and . . . it was stored on my computer then in a shared file and available for others to download.
>
> . . .
>
> MABEE: It went into a file called Shared File and it was instantly available to be broadcast on the Internet.
>
> COURT: Did you know that was going to happen?
>
> MABEE: Yes.
>
> COURT: Would it have been possible for you to have downloaded it, printed it, and erased it from your computer?
>
> MABEE: I could have deleted it, yes.

. . .

MABEE: [But] I left it on the computer.

COURT: Why did you leave it on the computer?  To see it, to be able to view it?

MABEE: To see if I could — I viewed it, yes.  I viewed it and I went on to other things and I left it on there.  I left it on my computer.  How long, I don't remember, but I left it on the computer and it was available for others to download.

COURT: Did you communicate with other people as to your having this file and that you had it available to them?

MABEE: No, no one, sir, nothing.

COURT: So this was just, as far as you were concerned, it was personal to you?  It was on your own computer, right?

MABEE: Yes.

COURT: But it was available knowingly for other people to download and pull from your computer?

MABEE: No, it was available for others.  It was only me.  Nobody else was involved.  It was only me, and it was available online for other people to download.

COURT: Understood.  Had you ever done — had you ever loaded off from other people's computers in a downloading capacity as you were making available to them?

MABEE: I never downloaded — I only downloaded from this program.  I didn't download it from anybody else's computer that I know of, no, just what was available through ARES.

COURT: Did you have as a purpose building a library of these or was this just a random matter?

MABEE: No, I didn't have a purpose of building them.  I — my curiosity grew and I looked for more to find out what was out there in the real world, and I did download them.

In calculating the offense level, the PSR assigned a base offense level of 22.  The probation officer recommended the assessment of a five-level enhancement to Mabee's base offense level because:

> The defendant distributed videos and a child pornography image, via his ARES shared files folder, for the receipt, or expectation of receipt of a thing of value, but not for pecuniary gain. By utilizing the ARES shared file folder, Mr. Mabee shared files which in turn allowed him to accept others['] shared files.

After adding that enhancement and others that Mabee does not contest on appeal, the probation officer arrived at a total offense level of 37. Mabee's criminal history category was I, which yielded an advisory guideline range of 210 to 262 months, the top end of which was adjusted to 240 months, the statutory maximum. 18 U.S.C. § 2252A(a)(2)(A); U.S.S.G. § 5G1.1(c)(1).

Mabee did not object to the PSR, but he filed a sentencing memorandum in which he asked the district court to sentence him below the advisory guidelines range. He provided the following account of his acts:

> Mr. Mabee first downloaded a file-sharing program because he believed that he could use it to download classic movies. He did not begin using the program to search for child pornography. When he downloaded the program, he agreed to allow file sharing. He did not foresee the consequences of enabling the "share file" feature when he was installing the program. He did not enable the feature with the expectation that he would benefit from it.
>
> . . .
>
> As Mr. Mabee used the peer-to-peer program, he had difficulty downloading full length feature films and he began exploring other content that was available. Mr. Mabee clicked on a tab titled "erotica." He began looking at the files that were available; the files were both adult and child pornography files. Mr. Mabee then began to search the program for adult and child pornography. Mr. Mabee viewed child pornography in his home. He did not trade images or videos. He did not create images or videos.
>
> . . .
>
> Mr. Mabee committed this offense by viewing child pornography in his home. The child pornography was created by others. Mr. Mabee did not manufacture child pornography. He did not pay to download child pornography. He did not engage in online chats about children or child pornography.

At the sentencing hearing, Mabee reiterated that he had no objection to the PSR. The court then, on its own, referencing the enhancements for "use of a computer" and the number of images recovered from the computer, reduced the offense level by a total of five levels. The court engaged in the following colloquy with the attorneys and the defendant:

> COURT: . . . This is the Court's calculation. The Court believes that this more truly reflects this matter, as well as I understand, Mr. Tilton, that from your client's perspective the reason your client got into distribution of it is in order to receive it, he had to agree that it was open for distribution. Correct?
>
> MR. TILTON: That's correct, Your Honor.
>
> COURT: He didn't send it to his best friend Tom and Jim and Harry, did he?
>
> MR. TILTON: No.
>
> COURT: This made it open file-sharing?
>
> MR. TILTON: Correct. It wasn't individual trading, but it was open to other people at the same program.
>
> COURT: Right, right. Okay. Mr. Mabee, have you had an opportunity to discuss this presentence report with your attorney?
>
> MABEE: Yes, Your Honor, I have.
>
> COURT: And does that presentence report accurately reflect you, the circumstances of this matter, and in all other respects is it fair and accurate?
>
> MABEE: I believe it does, yes. Yes, sir.
>
> COURT: Okay. Are you satisfied with the representations here that are provided on your behalf by Mr. Tilton?
>
> MABEE: Oh, yes, yes.
>
> COURT: Very well. Okay. I have a 121 to 151 range. Is that right?
>
> MR. LEWIS: I agree, Your Honor.
>
> MR. TILTON: I agree, Your Honor.

The attorneys addressed Mabee's motion for a variance, and the district court then sentenced Mabee to 121 months in prison, which was at the bottom of the new range. At the end of the sentencing hearing, the district court asked if the parties had "[a]ny legal objection to the sentence imposed not previously raised," and the defendant's attorney answered "No."

## II.

Mabee acknowledges that he failed to object to the five-level trading enhancement in the district court. Where the defendant "concedes that he failed to object in the district court to [a sentencing] enhancement," he forfeits his claim, and the standard of review is plain error. *United States v. Babcock*, 753 F.3d 587, 590 (6th Cir. 2014). The government, however, insists that Mabee waived his claim of error by failing to object at the sentencing hearing and by agreeing with the district court that in order to receive child pornography, he had to consent that his own child pornography was available for distribution.

"Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A defendant's failure to object to a sentencing error, or even his acknowledgment that he has no objection, does not amount to a waiver of that error. *See United States v. Simmons*, 587 F.3d 348, 374 (6th Cir. 2009) (explaining that "[w]here the sentencing judge asks the parties [if they have any objections] but a party fails to raise any objections 'not previously raised,' the defendant forfeits all unpreserved claims and plain-error review applies on appeal") (citing *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004); *United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008) (en banc)). However, where the defendant has "explicitly agreed" that a particular guideline calculation or enhancement applies to his sentence, any challenge to that enhancement on appeal is waived. *United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002) (holding that objection to classification of two offenses as

aggravated felonies was waived because in his sentencing memorandum the defendant "explicitly agreed that they qualified as such").

Mabee did not waive the issue of whether the trading enhancement applied to him, because neither he nor his attorney ever explicitly admitted that it applied, and he never knowingly relinquished his right to challenge the applicability of that enhancement. Several aspects of the record confirm this. *First*, although Mabee's sentencing memorandum did not raise any objection to the section 2G2.2(b)(3)(B) enhancement proposed in the PSR, it also cannot fairly be read as conceding or agreeing that the enhancement did apply. In fact, Mabee contested the conclusion that he intentionally or knowingly "traded" or "bartered" child pornography, when he asserted that he "did not foresee the consequences of enabling the 'share file' feature when he was installing the program," and "did not enable the feature with the expectation that he would benefit from it." He also contended that he only "viewed child pornography in his home," and that he "did not trade images or videos," "did not create images or videos," "did not pay to download child pornography," and "did not engage in online chats about children or child pornography."

*Second*, the section 2G2.2(b)(3)(B) enhancement never was discussed during the district court's colloquy with the attorneys regarding the calculation of the offense level, and the district court's revisions to that calculation. Instead, the district court made clear that it was "only changing [paragraphs] 26 and 27," which referred to other, distinct enhancements. When the district court asked the attorneys to confirm that its math was correct, counsels' response was directed only to the question whether, after subtracting the five points that the district court stated it was removing from the original proposed total offense level of 37, a total offense level of 32 was the proper arithmetic result. Although the defendant unquestionably failed to object to the trading enhancement during the sentencing hearing, the discussions in no way constituted an explicit agreement or representation by the defendant that the enhancement applied to him.

*Third*, even if the factual representations that Mabee made at the plea and sentencing hearings were sufficient to support the district court's conclusion that the

trading enhancement was justified, those admissions were ambiguous at best, and therefore did not demonstrate the sort of plain, positive concurrence with the district court's conclusions needed to establish a waiver or to invoke the principle of invited error. Mabee's attorney did concede that his "client got into distribution of [child pornography because] in order to receive it, he had to agree that it was open for distribution"; and when asked if the "presentence report accurately reflect[s] you, the circumstances of this matter, and in all other respects is . . . fair and accurate," Mabee responded, "I believe it does, yes. Yes, sir." However, when the district court asked if Mabee sent child pornography to any "friends," Mabee's counsel replied, "No." Mabee's attorney conceded that his use of the ARES program included "open file-sharing," but he followed up by asserting that the activity did not involve "individual trading."

*Fourth*, during the plea colloquy, Mabee made a series of somewhat conflicting remarks regarding his use of the ARES program, which taken together certainly indicate that Mabee knew that the files he possessed were available for others, but which do not clearly establish that he made the files available for the purpose of receiving other files in return, or that he meant to engage in any active exchange of files. Mabee unquestionably conceded that he knew that files he downloaded "went into a file called Shared File and [were] instantly available to be broadcast on the Internet," but he also stated that he did not "communicate with other people" as to the availability of the files, "[n]obody else was involved," and "as far as [he] was concerned, it was personal [to him]." Mabee went on to explain that as far as he knew he "didn't download from anybody else's computer," and he claimed that he "didn't have a purpose" when collecting the files, but only downloaded them in order to view them on his own computer.

None of these admissions, taken either alone or together, is sufficient to establish that Mabee "explicitly agreed" that the trading enhancement applied to him, and his representations therefore do not establish that he waived his objection to the enhancement.

The government cites several of our cases in support of its argument that "[a] defendant waives a known claim by 'agree[ing] in open court with a judge's proposed course of conduct.'" *United States v. Hall*, 373 F. App'x 588, 592 (6th Cir. 2010). But in those cases, the objecting party, unlike Mabee, each had made a plain, explicit concession on the record addressing the precise issue later raised on appeal. *See United States v. Smith*, 749 F.3d 465, 494 (6th Cir. 2014) ("The [district] court explicitly stated that the defense could call Wheat, but that Wheat could not give expert testimony. Defense counsel, in response, stated 'I am 100 percent behind that.'"); *United States v. Chames*, 376 F. App'x 578, 580 (6th Cir. 2010) (per curiam) ("Chames agreed at the April 28, 2009 revocation hearing that, if he failed to successfully complete the treatment program at Dismas House, he would be sentenced to ten months' imprisonment."); *Hall*, 373 F. App'x at 592 (defense counsel stated at the sentencing hearing: "I recognize my client has the criminal history that he does, and I certainly understand that he's a, pursuant to statute, an armed career criminal."); *Aparco-Centeno*, 280 F.3d at 1088 ("Not only did Aparco-Centeno not object to the district court's consideration of the two prior convictions as aggravated felonies under 8 U.S.C. § 1326, he explicitly agreed that they qualified as such."); *United States v. Lujan*, 41 F. App'x 799, 800 (6th Cir. 2002) (per curiam) ("Lujan has waived his right to challenge the quantity of drugs attributed to him by affirmatively agreeing to the drug quantity and base offense level of 32 assigned to him."); *United States v. Kincaide*, 145 F.3d 771, 784 (6th Cir. 1998) ("[A]ll parties agreed that Riley was not challenging the calculation in the PSR that between five and fifteen kilograms of cocaine were attributed to Riley.").

The government also cites *Lanham v. United States*, 4 F. App'x 313, 315 (6th Cir. 2001) (per curiam), in which the panel stated that a failure to object standing alone constituted a waiver. However, the panel also held in the alternative that application of the challenged enhancement survived plain error review. And if *Lanham* were read as holding that a mere failure to object constitutes waiver, it would conflict with our later published decisions in *Bostic* and *Simmons*, in which we held that an objection that the defendant fails to raise at sentencing is forfeited, not waived. *Simmons*, 587 F.3d at 374 (explaining that "[w]here the sentencing judge asks the parties [the *Bostic*] question but

a party fails to raise any objections 'not previously raised,' the defendant *forfeits* all unpreserved claims and plain-error review applies on appeal" (emphasis added)).

Mabee did not waive the issue of whether the district court properly applied the trading enhancement in U.S.S.G. § 2G2.2(b)(3)(B) to his offense level calculation.

III.

Because he did not object in the district court, to prevail on his substantive claim, Mabee must show that (1) the application of the trading enhancement under section 2G2.2(b)(3)(B) was "error; (2) the error was clear or obvious rather than subject to reasonable dispute; (3) it affected the defendant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) it seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Massey*, 663 F.3d 852, 856 (6th Cir. 2011).  We have "made clear that '[a] sentencing court commits procedural error by failing to calculate (or improperly calculating) the Guidelines range,'" *United States v. McCloud*, 730 F.3d 600, 603 (6th Cir. 2013) (quoting *United States v. Rosenbaum*, 585 F.3d 259, 266 (6th Cir. 2009)), and "[f]ailure to apply the correct Guidelines range generally constitutes plain error," *ibid.* (citing *United States v. Story*, 503 F.3d 436, 441 (6th Cir. 2007)).

Section 2G2.2(b)(3)(B) of the United States Sentencing Guidelines prescribes a five-level enhancement to the child pornography offense level for "[d]istribution [of child pornography] for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain."  The commentary to the guidelines explains that "'Distribution' means any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor."  U.S.S.G. § 2G2.2 cmt. 1.  The commentary continues:

> "Distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain" means any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit.  "Thing of value" means anything of valuable consideration.  For example, in a case involving the bartering of child pornographic material, the "thing of value" is the child pornographic material received

in exchange for other child pornographic material bartered in consideration for the material received.

U.S.S.G. § 2G2.2 cmt. 1.

Sharing child pornography on a file-sharing program alone does not trigger the trading enhancement. *United States v. Binney*, 562 F. App'x 376, 379 (6th Cir. 2014) (citing *United States v. McManus*, 734 F.3d 315, 320, 321 (4th Cir. 2013); *United States v. Vadnais*, 667 F.3d 1206, 1209 (11th Cir. 2012)); *see also United States v. Emmons*, 524 F. App'x 995, 999 (6th Cir. 2013) (observing that "[t]he [§ 2G2.2(b)(3)(B)] enhancement does not apply merely because a defendant used a file-sharing program, but extensive use of the program resulting in several hundred images will weigh in favor of the enhancement"). "Instead, we examine whether there is evidence, 'direct or circumstantial,' that [the defendant] 'reasonably believed that he would receive something of value by making his child pornography files available for distribution through a peer-to-peer network.'" *Binney*, 562 F. App'x at 379 (citation omitted).

In *Binney*, there was no direct evidence of *quid pro quo* sharing, such as recorded conversations or chat logs. However, the defendant had collected an "astounding number of images and videos found on his computer" which made his actions "among the worst cases the district court had ever seen." *Id.* at 380. In addition, Binney subscribed to a file sharing program, had a list of other file sharers who shared pornography with him, and made his own collection available to others. We found that evidence to be sufficient circumstantial proof that Binney shared his child pornography collection "with the expectation of receiving child pornography in return," thereby justifying the application of section 2G2.2(b)(3)(B). *Ibid.*

The circumstantial evidence in this case is not compelling. Forensic analysis of Mabee's computer revealed that he possessed no more than 87 distinct child pornography images and videos, far less than the "astounding number of images and videos" recovered from the defendant's computer in *Binney*. No evidence appears in the record suggesting that Mabee maintained any "friends list" in the ARES program, and Mabee asserted that he did not "communicate with other people" as to the availability

of the files, "[n]obody else was involved," and "as far as [he was] concerned, it was personal [to him]."

However, the circumstantial evidence of bartering or trading is bolstered by one crucial item: Mabee's acknowledgment that he "got into distribution of [child pornography because] *in order to receive it*, he *had to agree* that it was open for distribution." (Emphasis added).  That acknowledgment permits an inference that Mabee decided to distribute files with an "expectation of receipt," because, by his admission, he knew that if he did not make his own files available, he could not receive any files in return from other file sharers.   The inference is arguably weak because the acknowledgment by Mabee came through his attorney's affirmative response to a leading question posed by the court.  Nevertheless, viewed as a whole, the evidence satisfies us that the district court did not commit clear or obvious error when it determined that Mabee engaged in the "[d]istribution [of child pornography] for the receipt, or expectation of receipt, of a thing of value."  U.S.S.G. § 2G2.2(b)(3)(B).  On a less compelling set of facts, we similarly held that "it was not plain error to apply the [trading] enhancement where [the defendant] joined a P2P network, allowing others access to files on his computer in exchange for access to files on their computers," and where the defendant "admitted that he had used the P2P network to download and view images of child pornography and to allow others to download similar images from his computer." *United States v. Frazier*, 547 F. App'x 729, 731, 736 (6th Cir. 2013).

IV.

The district court did not plainly err when it applied the five-level enhancement described in U.S.S.G. § 2G2.2(b)(3)(B) to the defendant's offense level.  Therefore, the defendant's sentence is **AFFIRMED**.