# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30516

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JASON DANIEL SCOTT,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

April 19, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Louisiana

Before DAVIS, SMITH, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Jason Daniel Scott pleaded guilty to one count of possessing child pornography and was sentenced to 108 months in prison and a lifetime term of supervised release. He appeals the district court's calculation of his Sentencing Guidelines range and the length and conditions of his supervised release. We VACATE and REMAND for resentencing.

I.

A grand jury indicted Scott on one count of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and three counts of receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). He originally pleaded guilty to one count of receiving child pornography and was sentenced to 235

months in prison and a ten-year term of supervised release.  This conviction and sentence, though, were vacated after Scott filed a 28 U.S.C. § 2255 motion alleging, among other things, that he pleaded guilty because his counsel assured him that the district judge had told a mutual friend that Scott would get "hammered" if he went to trial, but that the judge would "take it easy on him" by sentencing him to only five years if Scott pleaded guilty.

Following this unusual course of events, Scott pleaded guilty again—this time to the single count of *possessing* child pornography.  According to the new plea agreement's stipulated factual basis and unrebutted statements in the Presentence Investigation Report (PSR), agents conducting an investigation into the use of a computer program called LimeWire determined that Scott's computer "was actively downloading and possessing child pornography."  The agents were able to download three illicit videos from the "shared" file folder on Scott's computer associated with LimeWire, and through a forensic examination of Scott's computer confirmed that those videos were downloaded from the internet.

The record contains little information about LimeWire.  The factual basis states that LimeWire "is used to trade files among members" and "regularly used to distribute child pornography."  The PSR adds that LimeWire is "peer-to-peer" software.  For background purposes, we refer to other courts' explanations:

> LimeWire is a file-sharing program that utilizes "peer-to-peer" ("P2P") technology.  By employing P2P technology, LimeWire permits its users to share digital files via an Internet-based network known as the "Gnutella network."  LimeWire users can share almost all files stored on their computers with other LimeWire users.  When a LimeWire user wishes to locate digital files available through the network, she enters search criteria into the search function on LimeWire's user interface.  LimeWire then scans the computers of other LimeWire users, to locate files that

match the search criteria.  The LimeWire user can download any files that LimeWire locates.

*United States v. Vadnais*, 667 F.3d 1206, 1208 (11th Cir. 2012) (quoting *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398, 410–11 (S.D.N.Y. 2011)). The searchable files are located in "shared folder[s] . . . created by the software on the computers of other users."  *Id.*  And when a user downloads a file, a copy "is placed in a designated sharing folder on the requesting user's computer." *Id.* (quoting *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 921 (2005)).  This placement in a shared folder is "automatic[]" based on LimeWire's default (but optional) file-sharing setting which makes downloaded files "retrievable by other LimeWire users":

> LimeWire encourages its users to share files and its "default settings make all files that a user downloads through LimeWire available to other LimeWire users for download."  However, a user may change the default settings.  "[A] user could turn off sharing altogether, designate another folder with a different name to serve as the 'Shared' folder, [or] manually remove files from the 'Shared' folder (or whatever folder had been designated) and prevent them from being shared on an individual basis."

*Id.* at 1208–09 (first alteration in original) (citation omitted).  It appears that a user who does not share files can still download them—that is, LimeWire permits "freeloading."  *Id.* at 1209.

Scott informed agents that he used LimeWire and Bit Torrent, which the PSR identifies as file-sharing programs.  Scott also admitted using "search terms . . . consistent with child pornography videos/images" on those two programs.  But the record does not contain an admission or other direct evidence that Scott knew he was making child pornography available to others or was aware of LimeWire's default file-sharing setting.

In calculating Scott's Sentencing Guidelines range, however, the PSR applied a five-level enhancement under U.S.S.G. § 2G2.2(b)(3)(B) for

"[d]istribution [of child pornography] for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." Scott objected and suggested that the two-level enhancement under § 2G2.2(b)(3)(F) for "[d]istribution other than distribution described in subdivisions (A) through (E)" applied instead. The addendum to the PSR disagreed, explaining that Scott "had the file sharing function of [LimeWire] turned on . . . allowing him to not only receive . . . but to 'distribute' child pornography," and noting that § 2G2.2(b)(3)(B) applies when a defendant trades child pornography in exchange for more child pornography. Scott submitted the same objection to the district court, pointing out that he was convicted of possession, not distribution, and arguing that there was no evidence that he knew he was making pornography available to others or that he was a sophisticated computer user who might be presumed cognizant of his sharing. The district court overruled the objection in a written memorandum, citing this court's decision in *United States v. Groce*, 784 F.3d 291 (5th Cir. 2015), along with the conclusion that "Scott, by using Limewire and other peer-to-peer file sharing programs, agreed to share the child pornography he gathered."

The district court then sentenced Scott to 108 months in prison.[1] It also imposed a lifetime term of supervised release with special conditions including absolute bans on (1) having "access to any computer that is capable of internet access" or (2) having "unsupervised contact with anyone under the age of 18," and requirements that he (3) register as a sex offender and (4) "consent to installation of monitoring software on any computer to which [he] has access." Scott timely appealed his sentence.

---

[1] We note that Scott's written judgment reflects a sentence of 109 months, in conflict with the oral pronouncement of 108 months. Of course, "[w]here there is an actual conflict between the district court's oral pronouncement of sentence and the written judgment, the oral pronouncement controls." *United States v. Mireles*, 471 F.3d 551, 557 (5th Cir. 2006).

No. 15-30516

II.

We review criminal sentences—including conditions of supervised release—using a two-step abuse-of-discretion standard. *United States v. Richardson*, 676 F.3d 491, 508 (5th Cir. 2012); *United States v. Rodriguez*, 558 F.3d 408, 411–12 (5th Cir. 2009). First, we ensure that the district judge committed no significant procedural error such as improperly calculating the Sentencing Guidelines range. *Richardson*, 676 F.3d at 508. Second, we review the substantive reasonableness of the sentence for abuse of discretion. *Id.* We review the district court's interpretation of the Guidelines de novo, and its factual findings for clear error. *Id.*

III.

Scott first argues that the district court committed procedural error by applying an incorrect sentencing enhancement. A five-level sentencing enhancement applies to § 2252A(a)(5)(B) convictions if the offense involved "[d]istribution [of child pornography] for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." U.S.S.G. § 2G2.2(b)(3)(B). A two-level enhancement applies for "[d]istribution other than distribution described in subdivisions (A) through (E)." *Id.* § 2G2.2(b)(3)(F). As with all sentencing enhancements, the prosecution has the burden of proving § 2G2.2(b)(3)(B)'s applicability by a preponderance of the evidence. *See United States v. Juarez*, 626 F.3d 246, 251 (5th Cir. 2010).

It is undisputed that "'distribution as defined in § 2G2.2 includes operating a file sharing program that enables other participating users to access and download files [then automatically] placed in a shared folder' available to other users." *United States v. Baker*, 742 F.3d 618, 620 (5th Cir. 2014) (alteration in original) (quoting *United States v. Dodd*, 598 F.3d 449, 452–53 (8th Cir. 2010)); *see also United States v. Richardson*, 713 F.3d 232, 236 (5th Cir. 2013). But the parties contest whether Scott distributed child

5

pornography "for the receipt, or expectation of receipt, of a thing of value" so as to warrant the five-level enhancement.

The key Fifth Circuit case interpreting § 2G2.2(b)(3)(B) in this context is *Groce*, in which the defendant pleaded guilty to *receiving* child pornography using a peer-to-peer file sharing program. 784 F.3d at 293–94. This court rejected Groce's argument that § 2G2.2(b)(3)(B) should not apply because he didn't expect to receive anything for sharing files, explaining:

> Generally, when a defendant *knowingly* uses peer-to-peer file sharing software, however, he engages in the kind of distribution contemplated by § 2G2.2(b)(3)(B). A peer-to-peer file sharing program "lets users exchange digital files through a network of linked computers." By using this software as Groce has, the user agrees to distribute the child pornography on his computer in exchange for additional child pornography. This is precisely the kind of exchange contemplated by § 2G2.2(b)(3)(B).

*Id.* at 294–95 (emphasis added) (citation omitted). After noting that we had approved the five-level enhancement in unpublished cases involving the "knowing use of peer-to-peer file sharing software," we affirmed the district court's application of § 2G2.2(b)(3)(B), reasoning:

> Groce *knowingly used Frostwire, a type of peer-to-peer file sharing software, to download and distribute child pornography*. Groce admitted installing and uninstalling peer-to-peer software numerous times. Groce was familiar with search terms that return images of child pornography. Groce knew that other users could download his files and that, by allowing users to do so, he would be distributing child pornography. Finally, Groce admitted that he "was always careful not to allow anybody to download *much* off of me," implying that he knowingly let some users download from him. The district court thus correctly concluded that Groce distributed child pornography in exchange for a non-pecuniary thing [of] value.

*Id.* at 295 (first emphasis added).

In *Groce*, it was clear that the defendant knew he was distributing child pornography to others, supporting the inference of a knowing, reciprocal

6

exchange or expectation thereof.[2]   That is significant because, as we have observed, a "defendant could not receive or anticipate receiving a thing of value in exchange for his distribution unless cognizant of his sharing." *Baker*, 742 F.3d at 621.  And other circuits universally agree that a defendant's unknowing distribution of child pornography through file-sharing software does not trigger the five-level enhancement.  *See Baker*, 742 F.3d at 620 ("It is . . . generally accepted both in this circuit and others that the five-level enhancement under § 2G2.2(b)(3)(B) applies only where the defendant knew that he was distributing child pornography in exchange for a thing of value through his use of file-sharing software."); *see also United States v. Hernandez*, 795 F.3d 1159, 1165–66 (9th Cir. 2015); *United States v. Mabee*, 765 F.3d 666, 674 (6th Cir. 2014); *United States v. McManus*, 734 F.3d 315, 319 (4th Cir. 2013); *United States v. Durham*, 618 F.3d 921, 931 (8th Cir. 2010); *United States v. Vadnais*, 667 F.3d 1206, 1209 (11th Cir. 2009); *United States v. Geiner*, 498 F.3d 1104, 1111 (10th Cir. 2007).

Here, we cannot ascertain whether the district court made the requisite finding that Scott "knowingly" used LimeWire to "download and distribute child pornography" within the meaning of § 2G2.2(b)(3)(B).  *See Groce*, 784 F.3d at 295.  The district court's memorandum overruling Scott's objection stated: "Pursuant to the reasoning of the court in *Groce*, Scott, by using Limewire and other peer-to-peer file sharing programs, agreed to share the child

---

[2] To the extent the Government argues that these facts were irrelevant to *Groce*'s disposition, we disagree and note that a sister circuit has rejected a similar argument. *See United States v. Stults*, 575 F.3d 834, 848–49 (8th Cir. 2009) (rejecting the government's argument that § 2G2.2(b)(3)(B) applies every time a defendant uses file-sharing software, and explaining that a previous case's statement that § 2G2.2(b)(3)(B) applies when a defendant shares files through a peer-to-peer network "was inseparable from [the court's] conclusion that the 'government met its burden of establishing that [the defendant] expected to receive a thing of value . . .' by introducing the defendant's admissions" that he "knew that, by using [a file-sharing network], other . . . users could download files from him" (quoting *United States v. Griffin*, 482 F.3d 1008, 1013 (8th Cir. 2007)).

pornography he gathered." The only facts mentioned in that memorandum establish how LimeWire works and that Scott used it to download child pornography—but say nothing about Scott's knowledge.[3] Thus, the district court made no express finding that Scott *knowingly* used LimeWire to exchange child pornography, so as to implicate *Groce*'s logic of an "agree[ment] to distribute the child pornography on his computer in exchange for additional child pornography." *Id.*

Moreover, we cannot tell whether the district court implicitly made the required finding. Unlike in *Groce*, there is no evidence that Scott "knew that others could download his files" and "knowingly let some users download from him." *See id.* at 295; *cf. United States v. Mabee*, 765 F.3d 666, 675 (6th Cir. 2014) (affirming enhancement where defendant who used different software acknowledged that he "got into distribution of child pornography because in order to receive it, he had to agree that it was open for distribution" (brackets and emphasis omitted)). And unlike in other cases, the district court pointed to no circumstantial evidence supporting a finding that Scott knew he was distributing child pornography in exchange for more of the same. *Cf. United States v. Binney*, 562 F. App'x 376, 379–80 (6th Cir. 2014) (per curiam) (affirming enhancement where defendant maintained a list of users who shared child pornography and made an "extensive collection of child pornography" available to others); *United States v. Stults*, 575 F.3d 834, 849 (8th Cir. 2009) (affirming enhancement where the district court cited circumstantial evidence "in support of its determination that Stults's level of computer proficiency supported a finding that he knew how LimeWire

---

[3] Before discussing *Groce*, the district court noted: "Scott used Limewire to upload child pornography. Limewire is used to trade files among members. Forensic examination of Scott's computer revealed the presence of 3 videos which contained images of child pornography. Also on the computer were cartoon images which included drawings of children being sexually exploited."

No. 15-30516

worked," including ownership of multiple computers and multiple CD-ROMs storing "substantial data obtained from other LimeWire users").

We therefore remand for the district court to determine whether the Government has met its burden of proving by a preponderance of the evidence that Scott *knowingly* used LimeWire in "the kind of exchange contemplated by § 2G2.2(b)(3)(B)." *See Groce*, 784 F.3d at 294; *United States v. Register*, 931 F.2d 308, 314 (5th Cir. 1991) (remanding where factual findings were insufficient to review applicability of enhancement).[4]

## IV.

"A district court has wide, but not unfettered, discretion in imposing terms and conditions of supervised release." *United States v. Duke*, 788 F.3d 392, 398 (5th Cir. 2015) (per curiam). That discretion is cabined in two ways:

> First, the condition of supervised release must be "reasonably related" to one of four statutory factors: (1) the nature and characteristics of the offense and the history and characteristics of the defendant; (2) the need for deterrence of criminal conduct; (3) the need to protect the public from further crimes of the defendant; and (4) the need to provide the defendant with vocational training, medical care, or other correctional treatment. Second, the condition must be narrowly tailored such that it does not involve a

---

[4] We note that some evidence not cited by the district court might be relevant. For example, Scott enrolled in (though did not complete) courses in Computer and Advanced Electronic Construction and Artificial Intelligence Robotics, which could be probative of his computer sophistication. Additionally, the PSR prepared for Scott's second sentencing states that his computer "was actively *downloading and possessing* child pornography"—an arguably important (and per Scott's counsel at oral argument, negotiated) departure from the original PSR's statement that Scott's computer was observed "actively *processing and trading child pornography*." Consideration of this and other evidence is for the district court, and we express no opinion on whether the enhancement should ultimately apply.

"greater deprivation of liberty than is reasonably necessary" to fulfill the purposes set forth in [18 U.S.C.] § 3553(a).

*Id.* (citation omitted). Scott argues that his supervised release terms violate these standards. We first address the standard of review, then turn to the merits.

A.

Abuse-of-discretion review typically applies to conditions of supervised release, but plain-error review applies if the defendant fails to object in the district court. *United States v. Weatherton*, 567 F.3d 149, 152 (5th Cir. 2009). Scott did not object to the length of his supervised release term or any of its conditions when the district court announced them at sentencing. And his argument that abuse-of-discretion review should nonetheless apply because he "had no pre-hearing notice" of the length or terms of supervised release fails. Scott cites no case in which this court has reviewed an unpreserved, alleged sentencing error for abuse of discretion on this lack-of-notice theory. To the contrary, when a defendant argued for the first time on appeal that special conditions were unreasonable and improperly imposed without pre-hearing notice, we recently reviewed both arguments for plain error. *See id.* at 152–56; *see also United States v. Oliphant*, 456 F. App'x 456, 458 (5th Cir. 2012) (per curiam) (expressing doubt as to whether "there is a notice requirement for any conditions of supervised release").[5] And despite Scott's conclusory assertion that objecting would have been futile, there is no indication that he

---

[5] Even if notice were required, Scott had notice of the potential length of his supervised release, as well as most of the special conditions, through the Guidelines. *See United States v. Bryant*, 754 F.3d 443, 446 (7th Cir. 2014) ("Defendant and lawyer are charged with knowledge of the sentencing guidelines, which list the standard conditions along with a number of special ones."); *see also, e.g.*, U.S.S.G. § 5D1.2(b)(2) (recommending the maximum term of supervised release for sex offenders, which in this case was life pursuant to 18 U.S.C. § 3583(k)); *id.* § 5D1.3(d)(7)(B) (recommending restrictions on computer usage for sex offenses involving a computer).

was prevented from doing so.  Indeed, after the special conditions were announced, counsel asked the district court to recommend a drug-abuse treatment program—and the court agreed.  *Cf. United States v. Salazar*, 743 F.3d 445, 448–50 (5th Cir. 2014) (reviewing for abuse of discretion because the district court repeatedly interrupted counsel's attempts to object).

We therefore review Scott's term of supervised release for plain error only.  Under this standard of review, "[w]hen there was (1) an error below, that was (2) clear and obvious, and that (3) affected the defendant's substantial rights, a 'court of appeals has the *discretion* to correct it but no obligation to do so.'"  *United States v. Hughes*, 726 F.3d 656, 659 (5th Cir. 2013) (quoting *United States v. Trejo*, 610 F.3d 308, 319 (5th Cir. 2010)).  "In considering whether an error is 'clear or obvious' we look to the 'state of the law at the time of appeal,' and we must decide whether controlling circuit or Supreme Court precedent has reached the issue in question, or whether the legal question would be subject to 'reasonable dispute.'"  *United States v. Fields*, 777 F.3d 799, 802 (5th Cir. 2015) (footnote omitted).  Even if the first three prongs are met, a court of appeals should "remedy the error *only* if it 'seriously affected the fairness, integrity or public reputation of the judicial proceedings.'"  *Trejo*, 610 F.3d at 319 (quoting *United States v. Olano*, 507 U.S. 725, 735–36 (1993)).

B.

Scott's strongest challenges are to the special conditions that, for the rest of his life, he cannot "have access to any computer that is capable of internet access" or "have unsupervised contact with anyone under the age of 18."  Shortly after Scott's sentencing, this court found erroneous the same lifetime conditions imposed on a defendant who pleaded guilty to receiving child pornography.  *See Duke*, 788 F.3d at 398–403.  We noted that "[n]o circuit court of appeals has ever upheld" an absolute lifetime ban on using any computer with internet access, and found it "hard to imagine that such a sweeping,

lifetime ban could ever satisfy [18 U.S.C.] § 3583(d)'s requirement that a condition be narrowly tailored to avoid imposing a greater deprivation than reasonably necessary." *Id.* at 399. We then explained that computer bans must "be narrowly tailored either by scope or by duration" because, among other reasons, "the ubiquity and importance of the Internet to the modern world makes an unconditional, lifetime ban unreasonable." *Id.* at 399–400. We similarly reasoned that association bans, such as the condition prohibiting all unsupervised contact with minors, must "be narrowly tailored to achieve some balance between protecting the defendant's liberty interest and the government's interest in protecting the public." *Id.* at 402. Even construing the broadly worded contact-with-minors provision to "permit incidental or chance encounters with minors," we held the absolute lifetime ban "unreasonably broad" given its lack of tailoring by duration or scope and the fact that—as here—Duke did not have any history of directly abusing a child. *See id.* at 402–03.

As the Government concedes, the first two prongs of plain-error review are met because these two conditions, identical to those in *Duke*, are clearly erroneous at the time of appellate review. *See Henderson v. United States*, 133 S. Ct. 1121, 1130–31 (2013); *Fields*, 777 F.3d at 802. The errors affected Scott's substantial rights because, had the district judge known how *Duke* would be resolved when she sentenced Scott for a similar crime with a shorter statutory maximum,[6] she presumably would not have imposed the same unconditional and highly restrictive lifetime bans.

Finally, regarding whether we should exercise our discretion to grant relief under the strict requirements of the plain-error standard's fourth prong, we are not bound by the Government's concession of reversible error, *United*

---

[6] *See* 18 U.S.C. § 2252(a)(b)(1) & (2).

No. 15-30516

*States v. Castaneda*, 740 F.3d 169, 171 (5th Cir. 2013) (per curiam), but we take into account the Government's position, candidly expressed in its brief and in oral argument, that the fourth prong is satisfied.  This court recently highlighted that errors warranting fourth-prong correction are rare and egregious.  *See United States v. Segura*, 747 F.3d 323, 331 (5th Cir. 2014).  "[U]ltimately, whether a sentencing error seriously affects the fairness, integrity, or public reputation of the judicial proceedings is dependent upon the degree of the error and the particular facts of the case."  *United States v. John*, 597 F.3d 263, 288 (5th Cir. 2010).  Government counsel argued for correction of the plain errors here because Scott—a young man—otherwise would face severe lifelong limits on his freedom of association and his ability to reintegrate into society that would not have been imposed if the district judge had the benefit of *Duke*, decided shortly after Scott's sentencing.  On these particular facts, we agree.

Thus, expressing no opinion on whether we would correct these errors if the Department of Justice had not taken the position that the fourth prong is met, we exercise our discretion to do so under these circumstances.  We note, however, our disagreement with the Government's position, stated in its brief, that "[r]emand for re-sentencing . . . is thus required."  Our discretion on the fourth prong, see *Hughes*, 726 F.3d at 659, is broad enough that it reasonably could have been exercised here to deny resentencing; that decision, ultimately, is the court's, not the Government's.  *See, e.g.*, *Young v. United States*, 315 U.S. 257, 258–59 (1942) (emphasizing that the court of appeals must independently examine any alleged errors).

Accordingly, we vacate the district court's impositions of lifetime bans on accessing any computer with internet capability and having any unsupervised contact with minors.  If the district court decides to impose similar conditions on remand, it may modify them by, among other things, reducing their

13

duration or conditioning computer usage or contact with minors on court or probation-officer approval. *See Duke*, 788 F.3d at 399, 401–02.[7]

## V.

For the reasons stated, we VACATE and REMAND Scott's sentence for resentencing consistent with this opinion.[8]

---

[7] Scott also argues that the district court erred in requiring him to register as a sex offender for life and to consent to the installation of monitoring software on any computer to which he has access. Scott has not shown these special conditions of supervised release to be plainly erroneous; indeed, he points to no controlling authority reversing either type of condition under similar circumstances. *See Fields*, 777 F.3d at 802 (explaining that on plain error review, "we must decide whether controlling circuit or Supreme Court precedent has reached the issue in question, or whether the legal question would be subject to 'reasonable dispute'"). Additionally, a lifetime duration of supervised release is not, itself, plainly erroneous here; indeed, the Guidelines recommend it, and there is no indication that the district court "impos[ed] that recommended term blindly and without careful consideration of the specific facts and circumstances of the case before it." *United States v. Alvarado*, 691 F.3d 592, 598 n.2 (5th Cir. 2012) (quoting *United States v. Kuchler*, 285 F. App'x 866, 870 n.2 (3d Cir. 2008)). But of course, the district court is not bound to reimpose any particular special condition or duration of supervised release at resentencing. *See United States v. Goodwin*, 717 F.3d 511, 521 (7th Cir. 2013) ("Since the district court's determinations regarding the length of the supervisory period and any conditions imposed on Goodwin during this period may involve interrelated decisions, a reassessment of one of these elements may provide cause for giving a second look to the entire supervisory regime.").

[8] Scott's written judgment incorrectly reflects a conviction for receiving, rather than possessing, child pornography. The district court should correct this seemingly clerical error when it issues a new judgment.