**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, <br><br> v. <br><br> AGUSTIN CAMARENA HERNANDEZ, AKA Hernandez Agustin Camarena, Jr., AKA Agustin Hernandez, *Defendant-Appellant*. | No. 12-50585 <br><br> D.C. No. 2:11-cr-00257-ODW-1 <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted
January 5, 2015—Pasadena, California

Filed August 3, 2015

Before: Alex Kozinski, William A. Fletcher,
and John B. Owens, Circuit Judges.

Opinion by Judge W. Fletcher

# SUMMARY[*]

## Criminal Law

The panel remanded with an instruction to amend the written judgment to conform with the oral pronouncement of the sentence, and otherwise affirmed the sentence, in a case in which the defendant pled guilty to two counts of possession of child pornography.

The panel held that U.S.S.G. § 2G2.2(b)(3)(B), which provides for a five-level enhancement for offenders who distribute child pornography "for the receipt, or expectation of receipt, of a thing of value," applies to a child pornography distributor who anticipates receiving something of value in return for his distribution, even in the absence of a specific agreement providing for reciprocity. The panel held that on the facts of this case, there is sufficient evidence that the defendant expected that he would receive child pornography in return for sharing his videos and images on a peer-to-peer file-sharing network, and that the district court appropriately applied the enhancement.

The panel found that the district court did not impermissibly rely on unreliable allegations that the defendant abused his daughters when it determined his sentence.

The panel rejected the defendant's argument that in determining his sentence the district court inappropriately

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

relied on a conclusion that the defendant was not "curable" or "treatable."

The panel rejected the defendant's argument that the district court improperly imposed an enhancement under U.S.S.G. § 2G2.2(b)(6), based on use of a computer to distribute the child pornography, after having rejected that enhancement on policy grounds.

The panel rejected the defendant's argument that the sentence is substantively unreasonable.

## COUNSEL

Gia Kim (argued), Deputy Federal Public Defender, Los Angeles, California, for Defendant-Appellant.

Elizabeth Ryunsoo Yang (argued), Assistant United States Attorney, Los Angeles, California, for Plaintiff-Appellee.

## OPINION

W. FLETCHER, Circuit Judge:

Agustin Camarena Hernandez used a peer-to-peer file-sharing network to share and download child pornography. Hernandez shared some of his child pornography with two undercover FBI Special Agents. After agents searched Hernandez's residence and confiscated his computer, they discovered over 11,000 videos and images of child pornography. Many involved girls under the age of twelve, and some as young as nine months old.

Hernandez pled guilty to two counts of possession of child pornography.  He was thereafter convicted in a bench trial of two counts of distribution of child pornography.  The district court sentenced Hernandez to 262 months in prison and lifetime supervised release.  On appeal, Hernandez challenges his sentence.  We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  We affirm in almost all respects.

## I.  Background

Hernandez amassed a large collection of over 11,000 child pornography videos and images, some of which he shared using a GigaTribe account.  GigaTribe is a peer-to-peer file-sharing network that enables its users to share digital files (image, video, or audio) with other users via the Internet.  Under GigaTribe's default setting, a user's files are not available to others.  To make files available, a GigaTribe user must affirmatively designate certain folders on his computer as "shared" or "non-shared."  A GigaTribe user controls access to "shared" files by inviting other users to join his network of "friends," or by accepting "friend" requests.

Hernandez's GigaTribe username was "pthcforyou," which stood for "preteen hardcore for you."  Using his account, Hernandez downloaded video and image files of child pornography and made these files available to his GigaTribe friends in a folder designated for sharing.  Hernandez understood that the videos and images he intentionally downloaded into his shared folder would be available for viewing and downloading by other users.

Using his "pthcforyou" username, Hernandez "friended" two GigaTribe users who were, in fact, undercover FBI

Special Agents.  On December 13, 2009, a San Diego FBI Agent accepted Hernandez's friend request.  The next day, the agent searched Hernandez's folder and saw files that appeared to contain child pornography.  The agent downloaded 1 video and 36 images of suspected child pornography.  Two of the images showed girls who were at most eight years old engaged in sexual conduct.

While the agent was downloading these files, Hernandez sent him a message to complain that the agent was "leeching" him by accessing his files and not providing files in return:

pthcforyou:     hi

pthcforyou:     Bell!!

pthcforyou:     hi

pthcforyou:     Bell!!

[Agent]:        hi

pthcforyou:     hey man were is ur files

[Agent]:        sorry about that I try to keep leechers out . . . will post some now

pthcforyou:     thx ur lecching me a lot

On October 13, 2010, an undercover FBI Special Agent in Phoenix "friended" Hernandez.  The Phoenix agent downloaded 44 image files from Hernandez's shared folder.  These images included three depicting girls under the age of

about eight engaged in sexually explicit conduct, including oral sex and vaginal/anal penetration.

On February 8, 2011, agents searched Hernandez's residence and recovered a laptop computer and an external hard drive. In an interview conducted on the day of the search, Hernandez admitted that he used GigaTribe and that his username was "pthcforyou," that he owned and exclusively used the laptop, that he downloaded child pornography, and that child pornography would be found on his laptop. Forensic analysis of the computer and external hard drive showed that Hernandez possessed over 11,000 videos and images of child pornography. Many of these videos and images involved girls under the age of twelve, and some as young as nine months old.

The United States charged Hernandez with two counts of possession of child pornography and two counts of distribution of child pornography. Hernandez pled guilty to both possession counts. In a bench trial on the distribution charges, Hernandez contended that use of peer-to-peer networks to share child pornography did not satisfy the "distribution" requirement of the statute. *See* 18 U.S.C. § 2252A(a)(2)(A) ("[a]ny person who . . . knowingly receives or distributes . . . any child pornography" shall be fined and imprisoned not less than five years and not more than twenty years). Relying on Hernandez's "affirmative actions in installing, inviting and accepting GigaTribe users to his computer and allowing them to download child pornography from his 'shared' folder," the district court stated that it had "little difficulty in concluding that [Hernandez] distributed child pornography in the sense of having 'delivered,' 'transferred,' 'dispersed,' or 'dispensed' it to others." The

district court sentenced Hernandez to 262 months in prison and lifetime supervised release.

On appeal, Hernandez challenges only his sentence.

## II.  Standard of Review

"Only a procedurally erroneous or substantively unreasonable sentence will be set aside." *United States v. Henderson*, 649 F.3d 955, 958 (9th Cir. 2011).  We "review the district court's interpretation of the Sentencing Guidelines de novo, its application of the Guidelines to the facts for abuse of discretion, and its factual findings for clear error." *Id.*  "Assuming that the district court's sentencing decision is procedurally sound, we then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.*

## III.  Discussion

Hernandez argues that the district court should not have applied the five-level sentencing enhancement applicable to offenders who distribute child pornography "for the receipt, or expectation of receipt, of a thing of value."  U.S.S.G. § 2G2.2(b)(3)(B).  Hernandez further argues that the district court made a number of procedural errors; that, as a substantive matter, his sentence was too long; and that his written sentence should be amended to conform to the sentence pronounced orally.  Finally, he asks, in the event of a remand for resentencing, that we reassign to a different district judge.

A. "Expectation" Under U.S.S.G. § 2G2.2(b)(3)(B)

Hernandez was convicted of distribution of child pornography in violation of § 2252A(a)(2)(A). A defendant convicted under this provision is eligible for a sentencing enhancement under § 2G2.2(b)(3) of the Sentencing Guidelines. Section 2G2.2(b)(3)(B) instructs the district court to impose a five-level enhancement "[i]f the offense involved . . . [d]istribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." The district court applied the five-level enhancement, concluding that Hernandez had an "expectation" of receiving something of value.

We agree with the district court and hold that § 2G2.2(b)(3)(B) applies to a child pornography distributor who anticipates receiving something of value in return for his distribution, even in the absence of a specific agreement providing for reciprocity. On the facts of this case, there is sufficient evidence that Hernandez expected that he would receive child pornography in return for sharing his videos and images on GigaTribe.

We have not previously interpreted § 2G2.2(b)(3)(B)'s requirement that a distributor of child pornography expect to receive a thing of value in return. But we do not write on a blank slate. Every other circuit to consider this question, except possibly the Eleventh Circuit, has agreed that "a defendant expects to receive a thing of value under U.S.S.G. § 2G2.2(b)(3)(B) when he distributes child pornography in anticipation of, or while reasonably believing in the possibility of, the receipt of a thing of value." *United States v. Geiner*, 498 F.3d 1104, 1110 (10th Cir. 2007). *See also United States v. Groce*, 784 F.3d 291, 294–95 (5th Cir. 2015)

(finding that a defendant distributed child pornography for a thing of value by knowingly using peer-to-peer file sharing software and thereby agreeing "to distribute the child pornography on his computer in exchange for additional child pornography"); *United States v. Whited*, 539 F.3d 693, 699 (7th Cir. 2008) ("'[E]xpectation of receipt' under § 2G2.2(b)(3)(B) does not require an explicit agreement or precise bargain . . . . Distribution of child pornography in the reasonable anticipation or reasonable belief of receiving a thing of value is enough for the enhancement to apply."); *United States v. Griffin*, 482 F.3d 1008, 1012–13 (8th Cir. 2007) (applying § 2G2.2(b)(3)(B) to a distributor who shared child pornography on a peer-to-peer network, despite the absence of any quid pro quo agreements); *United States v. Maneri*, 353 F.3d 165, 168 (2d Cir. 2003) ("[T]he provision is implicated if the distributor expects — rather than just hopes — to receive a thing of value . . . in return for distributing child pornography."); *United States v. Vadnais*, 667 F.3d 1206, 1209 (11th Cir. 2012) ("There must be some other evidence, whether direct or circumstantial, that a defendant reasonably believed that he would receive something of value by making his child pornography files available for distribution through a peer-to-peer network."). *But see United States v. Spriggs*, 666 F.3d 1284, 1288 (11th Cir. 2012) ("Without evidence that [the distributor] and another user conditioned their decisions to share their illicit image collections on a return promise to share files, we cannot conclude there was a transaction under which [the distributor] expected to receive more pornography.").

We agree with our sister circuits. The enhancement applies to anyone who distributes child pornography "for the receipt, *or expectation of receipt*, of a thing of value." U.S.S.G. § 2G2.2(b)(3)(B) (emphasis added). As the Second

Circuit noted, "the key word in this case is 'expectation.'"
*Maneri*, 353 F.3d at 169. Although there is no statutory
definition, expectation

> has been defined as "the act or action of
> looking forward: anticipation." *Webster's
> Third New International Dictionary* 799
> (1976); *accord Black's Law Dictionary* 598
> (7th ed. 1999). Accordingly, based on the
> ordinary meaning of the word "expectation,"
> [the] enhancement applies when a defendant
> distributes child pornography in anticipation
> of, or while reasonably believing in the
> possibility of, the receipt of a thing of value.

*Id.* We agree. The enhancement applies to any offender who
anticipates getting a thing of value in return for distributing
child pornography, even in the absence of a quid pro quo
agreement. While the distributor's behavior "*might* be
characterized by a specific agreement or understanding, it
*need not* embrace an agreement or understanding to give rise
to an 'expectation'" within the meaning of § 2G2.2(b)(3)(B).
*Id.* at 170.

   Despite what appears to be the plain meaning of
"expectation," Hernandez relies on Application Note 1 to
§ 2G2.2(b)(3)(B) to argue that the enhancement only applies
where there is a quid pro quo agreement between a child
pornography distributor and a recipient. Application Note 1
defines "[d]istribution for the receipt, or expectation of
receipt, of a thing of value, but not for pecuniary gain" as:

> any *transaction*, including bartering or other
> in-kind transaction, that is conducted for a

thing of value, but not for profit. "Thing of value" means anything of valuable consideration. For example, in a case involving the bartering of child pornographic material, the "thing of value" is the child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received.

(Emphasis added.)

Hernandez argues that the Application Note understands "expectation" as requiring a return promise of valuable consideration. The critical word in the Application Note is "transaction." For Hernandez's argument to succeed, he must persuade us that a "transaction" is limited to quid pro quo agreements. That is, he must persuade us that "transaction" does not include the action of a distributor who allows another person to access his child pornography files when he merely expects to receive something in return. The Second Circuit rejected this argument in *Maneri*. The court held that "a 'transaction' does not necessarily include a specific agreement." 353 F.3d at 169. The word also "includes a 'communicative activity . . . involving two parties . . . reciprocally affecting or influencing each other.'" *Id.* (quoting *Webster's Third New International Dictionary* 2425 (1986)) (omissions in original). We agree with the Second Circuit that the concept of "affecting or influencing each other" is a more inclusive concept than entering into a quid pro quo agreement, and we conclude that it covers the conduct in this case. Although the Application Note refers to bartering and other in-kind transactions, these are "examples of conduct to which [the subsection] applies" and are "not determinative of the subsection's full reach." *Id.* at 170.

"The word 'including' before the examples indicates that *any* transaction — so long as it involves the 'expectation' of the 'receipt' of a 'thing of value' — suffices to trigger the subsection's enhancement." *Id.*

Sharing child pornography files on a peer-to-peer network does not in and of itself demonstrate that the distributor expects he will get something of value in return. "Although a defendant *may* share files on a file-sharing network with the expectation of receiving other users' files in return, this is not necessarily true in every case." *Geiner*, 498 F.3d at 1111 (emphasis added). An offender's use of a peer-to-peer sharing network may be considered, but it is insufficient, standing alone, to demonstrate that an expectation existed. *See, e.g.*, *Vadnais*, 667 F.3d at 1209 ("[S]imply using a peer-to-peer program is not itself sufficient to trigger the five-level enhancement."); *United States v. Durham*, 618 F.3d 921, 931 (8th Cir. 2010) ("[W]e have explicitly rejected any suggestion we automatically apply a distribution enhancement based merely on a defendant's use of a file-sharing program. Rather, the enhancement must be decided on a case-by-case basis depending on the facts at hand." (internal citation omitted)); *Geiner*, 498 F.3d at 1111 ("To apply the enhancement to every defendant who shares files on a peer-to-peer file-sharing network would be to disregard the connection between distribution and 'thing of value' in the provision's requirement that 'distribution [be] *for* the receipt, or expectation of receipt, of a thing of value.'" (alteration in original) (quoting U.S.S.G. § 2G2.2(b)(3)(B))); *cf. Groce*, 784 F.3d at 295 (holding that "knowing use of peer-to-peer file sharing software triggers § 2G2.2(b)(3)(B)"). The sentencing judge must look for additional indications that the offender had a genuine expectation that he would receive

something of value in return for distributing the child pornography at issue.

In this case, there is specific evidence that Hernandez shared his collection of child pornography with an undercover FBI agent based on his expectation that he would receive child pornography in return. When the agent in San Diego downloaded Hernandez's files but did not reciprocate, Hernandez complained that the agent was "leeching" him. The exchange makes clear Hernandez's expectation that the agent would reciprocate. When the agent wrote, "sorry about that I try to keep leechers out . . . will post some now," Hernandez responded, "thx ur lecching me a lot." We agree with the district court's factual finding that this exchange demonstrated both Hernandez's "intent to receive similar images from those he is giving access to" and his efforts at "policing" that goal. We conclude that this exchange is sufficient to show that Hernandez had an expectation of receiving something of value in return for allowing access to his child pornography files, and that the district court appropriately applied the five-level enhancement of § 2G2.2(b)(3)(B).

## B. Procedural Challenges

"It would be procedural error for a district court to fail to calculate — or to calculate incorrectly — the Guidelines range; . . . to choose a sentence based on clearly erroneous facts; or to fail adequately to explain the sentence selected, including any deviation from the Guidelines range." *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). Similarly, a district court abuses its discretion whenever it relies on materially false or unreliable information at

sentencing.  *United States v. Hanna*, 49 F.3d 572, 577 (9th Cir. 1995).

### 1.  Unreliable Information

Hernandez argues that the district court improperly relied on unproven allegations that Hernandez sexually abused his daughters when it determined the length of his sentence. Although it is a somewhat close question, we disagree that the district court so relied.

Early in the sentencing hearing, the district judge indicated to Hernandez's counsel that if he looked at the pornographic videos, as counsel was requesting, he would impose a longer sentence.  He stated, "[I]f you want me to take a look at this material to see whether or not some of these enhancements are warranted, I will do that.  But if they are what I suspect they are, [a sentence at the] low end [of the Guidelines range] is off the table because of his conduct with his own child."   A short time later, the court appeared to change its view about the relevance of any alleged sexual conduct with that child, saying to Hernandez's counsel:

> All right.  Listen, I agree with what you said about the daughter.  We have an allegation made by her to authorities, but the authorities have done nothing.  So I agree with you. Based upon that, we can't use that to somehow enhance Mr. Hernandez's punishment.

Finally, at the end of the sentencing hearing, the court stated that "there is evidence to suggest that Mr. Hernandez has previously attempted to sexually abuse his own children," but

then went on to say that "[h]e has, however, been removed from the lives of his own children, and, thus, *if* he ever presented or posed a threat to them, he no longer does so." (Emphasis added.)

Although the district court recognized that there was evidence "to suggest" that Hernandez had "previously attempted to sexually abuse his own children," it also stated that it could not use a mere allegation of abuse "to somehow enhance Mr. Hernandez's punishment."  And the court made clear, by using the word "if," that the sexual abuse of Hernandez's children had not been established, and that, even if Hernandez had posed a threat to them, he no longer did. We therefore find that the district court did not impermissibly rely on the unreliable allegations that Hernandez abused his daughters when it determined Hernandez's sentence.

## 2.  Incurable Condition

Hernandez argues that in determining his sentence the district court relied on its personal belief that Hernandez suffered from an incurable condition.  We do not believe that the district court inappropriately relied on a conclusion that Hernandez was not "curable" or "treatable."

During the sentencing hearing, the court stated, "I think other children are at risk.  I haven't heard anyone tell me that this stuff is curable."  The court also noted that Hernandez had "an overwhelming collection of material.  This wasn't one or two or a dozen or two or a hundred or two.  He has got really quite a serious condition, and I think lifetime supervision is going to be appropriate."  Based on the nature and quantity of child pornography found on Hernandez's

computer, the district court did not believe that Hernandez could be treated:

> The material that the court has been exposed to for sometime now does suggest that this is not a treatable condition.  The best that can be hoped for is that one will learn to control his conduct, but I do believe that lifetime supervision is appropriate in these cases, particularly when we are dealing with a condition that is as serious as Mr. Hernandez's is.

Despite these statements, this case is different from *United States v. Cossey*, 632 F.3d 82 (2d Cir. 2011) (per curiam), upon which Hernandez relies.  In *Cossey*, the Second Circuit reversed a sentence that depended on a district court's unsupported belief that possession of child pornography was genetically determined.  Two separate psychological reports had concluded that the defendant was "at a low to moderate risk to re-offend."  *Id.* at 87.  The district court dismissed these reports as "worthless," stating "it did not 'have a lot of faith'" in the psychology and psychiatry professions; the court proceeded to make its own predictions "as to the state of the science of genetics 'fifty years from now.'"  *Id.* at 87–88.  Based on its belief that proclivity to possess child pornography was genetically determined, the court rejected the conclusion reached in the two reports, stating, "You are what you're born with.  And that's the only explanation for what I see here."  *Id.* at 87.  The Second Circuit concluded that it was "impermissible for the court to base its decision of recidivism on its unsupported theory of genetics."  *Id.* at 88.

We agree with the Second Circuit's decision in *Cossey*, but hold that it does not apply to the case now before us. Some of the district court's comments in this case do suggest that a desire to possess and distribute child pornography is not curable. But the district court never said, as the district court said in *Cossey*, that Hernandez would be unable to control his behavior. Indeed, the district court said quite the opposite. As the passage from the sentencing hearing, quoted above, makes clear, the district court accepted that it was possible for someone like Hernandez to "learn to control his conduct," and he determined Hernandez's sentence based on this view. There were also no psychological reports to indicate, as in *Cossey*, that Hernandez was at low to moderate risk to re-offend. Instead, in this case, Hernandez possessed "an overwhelming collection of material," and even acknowledged that he had fallen "into an addiction." Finally, unlike *Cossey* where the district court relied "nearly entirely" on its unsupported predictions in sentencing, *see id.*, here, the district court's sentencing decision depended on other, substantial, case-specific evidence about Hernandez's addiction to child pornography. Given these differences, the district court's statements do not constitute reversible error.

### 3. Use of a Computer

Hernandez argues that the district court improperly imposed a two-level enhancement based on his use of a computer to distribute the child pornography. *See* U.S.S.G. § 2G2.2(b)(6) ("If the offense involved the use of a computer . . . for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material, increase by 2 levels."). Hernandez contends that the district court imposed the enhancement even though it had already rejected that enhancement on policy grounds.

That is not how we read the record. The district court mentioned § 2G2.2(b)(6) only to ensure that the computations in the Pre-Sentence Report were accurate. After confirming the computations, the court rejected the two-level computer enhancement, saying to Hernandez's counsel, "I agree with you about the computer." The court noted it was not "bound" by the child pornography guidelines and that it enjoyed "extensive discretion in terms of fashioning what it deems to be a reasonable sentence." In this case, the court "fashioned what it deems to be a reasonable sentence. It just so happens that it is within the guidelines." The court did not rely on § 2G2.2(b)(6) after rejecting it, and did not provide an inconsistent explanation of the sentence.

## C.  Substantive Challenge

"A substantively reasonable sentence is one that is 'sufficient, but not greater than necessary' to accomplish § 3553(a)(2)'s sentencing goals." *United States v. Crowe*, 563 F.3d 969, 977 n.16 (9th Cir. 2009) (quoting 18 U.S.C. § 3553(a)). At sentencing, the district court must consider seven factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing range established by the Sentencing Guidelines; (5) pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among defendants who have similar criminal records and have been found

guilty of similar conduct; and (7) the need to
provide restitution to victims.

*Id.* at 977 n.15 (citing 18 U.S.C. § 3553(a)).

The district court sentenced Hernandez to 262 months in
prison, a sentence at the low end of the Guidelines but longer
than the government had recommended.  Hernandez argues
that his sentence is longer than necessary "to protect the
public from further crimes of the defendant."  18 U.S.C.
§ 3553(a)(2)(C).  As the district court found, Hernandez
admitted to having a "problem" and "deriv[ing] sexual
pleasure from these child pornographic images and videos.
The sheer volume of Hernandez's collection, approximately
11,000 images and videos supports a finding that Mr.
Hernandez has a sexual interest in children."  The district
court did not abuse its discretion in setting a sentence that
reflected this risk.

Hernandez points to shorter sentences that defendants
received in other child pornography cases, but those cases are
not comparable.  Some of the defendants in those cases were
charged with possession or distribution of child pornography,
but not both.  Hernandez also has not shown that these
defendants distributed child pornography in the expectation
of receiving something of value, or that they owned
collections of child pornography as large as his.

D.  Discrepancy Between Oral and Written Sentence

Hernandez and the government agree that there are
discrepancies between the sentence that the district court
delivered orally and the sentence in the written judgment.
They also agree the oral pronouncement controls.  There are

three discrepancies.    First, the oral sentence requires Hernandez, upon release, to participate in outpatient substance abuse treatment and counseling.    The written judgment requires him, in addition, to participate in "urinalysis, breath, and/or sweat patch testing," and to "abstain from using illicit drugs and alcohol during the period of supervision."    Second, the oral sentence requires Hernandez to pay a special assessment. The written judgment requires him, in addition, to pay restitution.  Third, the oral sentence prohibits Hernandez, upon release, from living anywhere with a "direct view" of school yards or places primarily used by persons under the age of 18.  The written judgment instead prohibits him from living within two thousand feet of any such place.

"When there is a discrepancy between an unambiguous oral pronouncement of a sentence and the written judgment, the oral pronouncement controls." *United States v. Fifield*, 432 F.3d 1056, 1059 n.3 (9th Cir. 2005).  As we have done in the past, "[w]e remand so that the district court can make the written judgment consistent with the oral pronouncement." *United States v. Hicks*, 997 F.2d 594, 597 (9th Cir. 1993).

### E.  Reassignment

Because we remand only for the district court to make ministerial changes to the judgment and we otherwise affirm, Hernandez's request for assignment to a different judge for resentencing is moot.

## Conclusion

We **REMAND** with an instruction to amend the written judgment to conform with the oral pronouncement of the sentence.  We otherwise **AFFIRM**.