NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

NOV 4 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-10034 |
| Plaintiff-Appellee, | D.C. No. 2:17-cr-01107-SPL-1 |
| v. | |
| KEVIN DARIO RUIZ-CASTELO, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Steven Paul Logan, District Judge, Presiding

Submitted September 14, 2020*
San Francisco, California

Before: SCHROEDER, W. FLETCHER, and VANDYKE, Circuit Judges.

Concurrence by Judge SCHROEDER, joined by Judge W. FLETCHER;
Concurrence by Judge VANDYKE

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review Appellant Ruiz-Castelo's sufficiency of the evidence arguments under *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), viewing all of the trial "evidence in the light most favorable to the prosecution" and determining whether "*any* rational

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." We affirm the convictions, and we remand for resentencing as requested by the government.

**1.    Count 1: Distribution of Child Pornography (18 U.S.C. §§ 2252(a)(2), (b)(1), and 2256):**

The government charged Ruiz-Castelo with knowingly distributing a child pornography video titled "reallola-issue2-v006.avi" on or about August 13, 2016. Ruiz-Castelo reasons that, because he was unable to view the video "for most of the period it was being 'distributed' to the DHS agent" through the BitTorrent network, he "could not possibly have known" the contents depicted sexually explicit conduct with a minor. He argues the government failed to present evidence that he viewed the video in the 45 minutes between his successful download and the completion of the agent's download from Ruiz-Castelo's computer.

But the government was required to prove Ruiz-Castelo's knowledge that the video contained sexually explicit conduct with a minor, not that Ruiz-Castelo necessarily viewed the video before he distributed it. *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994). The government provided sufficient evidence to the jury for it to conclude beyond a reasonable doubt that Ruiz-Castelo knowingly distributed child pornography. The government provided ample evidence that (1) child pornography files are often named so that users know they contain child

pornography, (2) "lola" is one of the names commonly used to signal a file contains child pornography, and (3) Ruiz-Castelo was a frequent user of child pornography. Combined with the evidence that Ruiz-Castelo was well-acquainted with how the file-sharing network BitTorrent works and frequently used it to download child pornography, the jury had more than sufficient evidence to convict him of knowing distribution of child pornography. *United States v. Budziak*, 697 F.3d 1105, 1109–10 (9th Cir. 2012).

After receiving *Miranda* warnings on the day of his arrest, Ruiz-Castelo confessed to knowingly downloading child pornography. Ruiz-Castelo had evidence of child pornography on his desktop computer, external hard drive, and one of his thumb drives. The government also demonstrated at trial that Ruiz-Castelo was familiar with how torrents worked, used torrents to download other files, and understood how to bypass antivirus protection through torrents.

The video in question was titled "reallola," which is a common keyword that designates content involving underage children. Ruiz-Castelo's internet history included numerous references to webpage titles using "reallola." It further demonstrated he had visited hundreds of child pornography web pages and saved hundreds of shortcut links and "jump lists" to photos of child pornography. Ruiz-Castelo admitted he knew that the titles of child pornography images and videos described their contents.

A rational juror could find beyond a reasonable doubt that Ruiz-Castelo understood that by downloading a known child pornography video via BitTorrent he would also be sharing the file with others in the network. The government presented sufficient evidence to convict Ruiz-Castelo on Count 1.

**2. Count 2: Possession of Child Pornography (18 U.S.C. §§ 2252(a)(4)(B) and 2256):**

The government also charged Ruiz-Castelo with knowingly possessing 13 images of child pornography. "In the electronic context, a person can receive and possess child pornography without downloading it, if he or she seeks it out and exercises dominion and control over it." *United States v. Romm*, 455 F.3d 990, 998 (9th Cir. 2006).

Exercising dominion can be demonstrated by viewing the images and saving them before deleting them. *Id.* Ruiz-Castelo admitted to viewing images of naked girls around the ages of 10 to 13. Although the 13 images were discovered on Ruiz-Castelo's thumb drive's unallocated space after he deleted them, the images were organized four folder-levels deep under a main folder entitled "pics and vid." The location and circumstances of these images differs from those in *United States v. Flyer*, where the files were found in unallocated space on the computer hard drive with no evidence the images had been manipulated. 633 F.3d 911, 919 (9th Cir. 2011). Here, Ruiz-Castelo moved the images after downloading them, organized

4

them, and admitted to viewing child pornography generally.

Although the images were deleted by the date in the indictment, which charged him with possession of child pornography "[o]n or about May 2, 2017," "[i]t is well-settled that the government need prove only that [Ruiz-Castello possessed the images] "reasonably near" the date specified in the indictment." *United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000). "Where, as here, the date is not a material element of the offense, any variance between the date charged in the indictment and proof of the date at trial is harmless error if it does not affect the defendant's substantial rights." *United States v. Shea*, 493 F.3d 1110, 1118 (9th Cir. 2007) (finding the fact that Shea created the malicious code that caused damage to the "protected computer" three weeks before the date in the indictment "immaterial"). The evidence demonstrated that the last date that the thumb drive was connected to Ruiz-Castelo's computer was April 27, 2017, five days prior to the date on the indictment. A rational juror could have concluded that Ruiz-Castelo deleted the files at issue on that date and thus possessed the child pornography images "reasonably near" to May 2, 2017.

A rational juror could find beyond a reasonable doubt that Ruiz-Castelo possessed the images because he admitted to viewing child pornography and moved, organized, and eventually deleted the child pornography images on his thumb drive. The government presented sufficient evidence to convict Ruiz-Castelo on Count 2.

5

**3.     Five-Point Sentencing Enhancement (U.S.S.G. § 2G2.2(b)(3)(B)):**

The government declined to defend the validity of the district court's five-point sentencing enhancement in light of *United States v. Hernandez*, 795 F.3d 1159, 1165–66 (9th Cir. 2015), and the parties agree the case should be remanded for resentencing on an open record.  In view of the government's concession on this point, we remand to the district court for resentencing on an open record.

**4.     Four-Point Sentencing Enhancement (U.S.S.G. § 2G2.2(b)(7)(C)):**

The government does *not* concede that the district court's four-point enhancement based on the number of images Ruiz-Castelo possessed was error.  But because we are remanding for resentencing based on the government's concession on the five-point enhancement, we need not reach this issue.

Ruiz-Castelo's convictions on Counts 1 and 2 for distribution and possession of child pornography are **AFFIRMED**.  Ruiz-Castelo's sentence of imprisonment is **VACATED** and his case is **REMANDED** for resentencing.



*United States v. Ruiz-Castelo*, No. 19-10034

SCHROEDER, Circuit Judge, with whom W. FLETCHER, Circuit Judge, joins, concurring:

I concur in the panel's memorandum disposition. I disagree with my colleague's separate concurrence disputing the soundness of the government's concession of error with respect to the five-level sentencing enhancement. Our law supports the government. In *United States v. Hernandez*, 795 F.3d 1159, 1165 (9th Cir. 2015), we held that the use of peer-to-peer file sharing does not in and of itself establish that the defendant distributor expected something of value in return so as to qualify for the enhancement. In that case there was more. The defendant who shared the child pornography with the FBI agent complained that he was not getting any back and demanded something in return. There is nothing like that in this record.

Judge VanDyke distinguishes *Hernandez* on the ground that the file-sharing network in this case is different, but that is a distinction the government rightly has not tried to draw because the *Hernandez* decision did not turn on technology. *Hernandez* upheld the enhancement on the basis of a showing that the defendant had a subjective expectation of receiving pornography in return for sharing pornography. The district court in this case appears to have relied on technology alone and therefore erred.

The government's concession of error is correct as a matter of law, and it is also commendable. The Justice Department's mission is not merely to win cases, but to seek justice. In the offices of the Attorney General in the Justice Department's main building in Washington is inscribed this sentence: "The United States wins its point when justice is done its citizens in the courts." The government's concession in this case is legally sound and follows the spirit of an honorable tradition. There is no good reason to take issue with it and every reason to respect it.

*United States v. Ruiz-Castelo*, No. 19-10034

VANDYKE, Circuit Judge, concurring.

I concur with the panel's memorandum disposition affirming Ruiz-Castelo's conviction but vacating his sentence. Citing *United States v. Hernandez*, 795 F.3d 1159 (9th Cir. 2015), the government declined to defend the five-point sentencing enhancement for distributing child pornography on the basis that "the evidence before the district court here does not establish any additional indications that would support the five-level enhancement." Given the government's concession that this case should be remanded for resentencing, we must do so.

But I write separately because I think the government has misapplied *Hernandez*, and I believe the district court's imposition of the five-level enhancement in Ruiz-Castelo's case was not inconsistent with *Hernandez*'s statement that "an offender's use of a peer-to-peer sharing network … is insufficient, standing alone," to support U.S.S.G. § 2G2.2(b)(3)(B)'s sentencing enhancement. *Hernandez*, 795 F.3d at 1165.

In *Hernandez*, the court agreed "[t]he enhancement applies to any offender who anticipates getting a thing of value in return for distributing child pornography, even in the absence of a quid pro quo agreement." *Id.* *Hernandez* then addressed whether such "anticipation" was necessarily shown just because an offender used a peer-to-peer file-sharing program. *Id.* at 1165–66. The court concluded it was not:

1

"simply using a peer-to-peer program is not itself sufficient to trigger the five-level enhancement." *Id.* (citation and alteration marks omitted). The court determined the sentencing enhancement should not apply if the only evidence to support it was participation in a peer-to-peer network. *Id.* As the court correctly explained, simply "[s]haring child pornography files on a peer-to-peer network does not in and of itself demonstrate that the distributor expects he will get something of value in return." *Id.* at 1165.

But the file-sharing process at issue in *Hernandez*—and peer-to-peer file-sharing generally—is distinguishable from the BitTorrent file-sharing network that Ruiz-Castelo used in this case. Unlike some types of peer-to-peer programs— including the peer-to-peer program at issue in *Hernandez*—a BitTorrent network has a built-in quid pro quo element. When a user downloads files from BitTorrent, "each user is both downloading and uploading several different pieces of a file from and to multiple other users"—automatically sharing the newly acquired pieces of a files with the entire network. *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1027 (9th Cir. 2013). It is this automatic sharing of pieces of files that makes a BitTorrent network work. BitTorrent networks by their design inherently incorporate a pay-to-play element—if you want to get pieces of files from other users, you must share your pieces of files. Thus, any person who intentionally downloads child pornography using a BitTorrent network does so "anticipating" that

2

he will be sharing that pornography while he is receiving it; indeed, it is precisely his "distributing" of the pornography over the BitTorrent network, even as he downloads it, that enables him to receive it using that network.

The district court in this case acknowledged this unique attribute of BitTorrent networks at the sentencing hearing, noting that based on the "substantial amount of information about this … network" at trial, "[Ruiz-Castelo] had to … send out bits and pieces to receive bits and pieces to … take into possession a photo." And Ruiz-Castelo "agreed to receive and share or offer or distribute child pornography" by participating in the BitTorrent network. By relying specifically on the required distribution of any files received by a BitTorrent network user, the district court differentiated Ruiz-Castelo's case from *Hernandez* and correctly applied the five-point sentencing enhancement.

Because BitTorrent protocols are "a further variant on the [peer-to-peer] theme …. with some key differences," *Fung*, 710 F.3d at 1026, I do not believe *Hernandez*'s general rule about generic peer-to-peer file-sharing systems applies to Ruiz-Castelo's use of a BitTorrent network. I therefore would have affirmed the district court's imposition of the five-point sentencing enhancement for distribution of child pornography had the government not acquiesced that Ruiz-Castelo's sentence be vacated on appeal.

Briefly responding to my colleagues' concurrence: their expansive reading of *Hernandez* makes no sense, either as a matter of technology or the law. *Hernandez* says that simply using "a peer-to-peer network … is insufficient, standing alone, to demonstrate" quid pro quo. 795 F.3d at 1165. That is uncontroversial. Many—maybe most—peer-to-peer networks do not require quid pro quo to work. But a BitTorrent network does. Nothing in *Hernandez* says that a peer-to-peer network could *never* incorporate quid pro quo. That would be silly, first as a descriptive matter of the technology involved, and thus as a matter of law. I'm not sure whether my colleagues disagree with my (and the district court's) description of the BitTorrent technology involved, or if they just oddly overreading *Hernandez* in a manner inconsistent with its animating rationale. Either way, it's wrong.

As to my colleagues' invocation of the truism that the Department of Justice should pursue justice: Sure. That is, after all, its name. But that begs the question: "what is justice?" My colleagues appear to assume "justice" in this case means a lighter sentence. I expect the child victims and their parents might disagree. Ultimately, a just sentence is the sentence the law permits—no more, but also no less. And as explained above, the law permits the five-level enhancement that was originally sought by the government and applied by the district court in this case.