**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0283n.06

**No. 09-6361**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**May 11, 2010**
LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff-Appellee,<br><br>v.<br><br>ANTONIO CHAMES,<br><br>     Defendant-Appellant.<br>_____/ | ON APPEAL FROM THE<br>UNITED STATES DISTRICT<br>COURT FOR THE EASTERN<br>DISTRICT OF KENTUCKY |

**BEFORE: MARTIN, SUHRHEINRICH, and WHITE, Circuit Judges.**

**PER CURIAM.** Defendant Antonio Chames appeals the judgment revoking his term of supervised release and sentencing him to ten months' incarceration. We AFFIRM.

## I. Background

On July 30, 2004, Chames was sentenced to fifty-one months of imprisonment followed by a three-year term of supervised release after pleading guilty to distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1). The term of supervised release included substance abuse aftercare, a special search condition, a condition to obtain his GED, and a $100.00 special assessment.

On January 4, 2008, Chames began his supervised release, but was arrested the next day for disorderly conduct, fleeing and evading, and resisting arrest. As a result, the district court revoked his supervised release and ordered Chames to serve 120 days at the Talbert Halfway House to be followed by twenty months of supervised release. Chames reported to Talbert House on February

1, 2008. However, he was terminated on February 26, 2008, for violating the program. His violations included "an extreme degree of resistence [sic] to various case managers, failing to attend corrective thinking classes, failing to make progress with locating employment, failing to provide verification of his status while not at Talbert House and being argumentative with Talbert House staff." The district court revoked his supervised release and sentenced him to four months' imprisonment to be followed by twenty months of supervision.

On August 30, 2008, after being released from prison, Chames was arrested for disorderly conduct. The charge was later dismissed and the district court took no action.

On March 5, 2009, Chames tested positive for using marijuana. On April 27, 2009, at a supervised release violation hearing, Chames admitted the violation and waived his right of allocution. On April 28, 2009, the district court found that Chames had violated the terms of his supervised release, and by agreement of the parties, modified Chames's supervision. Specifically, the court ordered Chames to the custody of Dismas House in Lexington, Kentucky, for six months. The district court further ordered that if Chames "fails to successfully complete the treatment program at Dismas House or is otherwise terminated, he be sentenced to ten (10) months incarceration."

Chames arrived at Dismas House on June 22, 2009. He was terminated the following day for threatening behavior. Chames was taken into custody on June 25, 2009. Chames was deemed indigent and counsel was appointed. On July 8, 2009, the magistrate judge held an evidentiary hearing on the United States Probation Office's motion to show cause why Chames's supervised release should not be revoked.

Sheryl Fisher, the Director of Dismas House, testified on behalf of the Government. Fisher stated that she terminated Chames because he displayed threatening behavior towards her during an employment skills meeting that she conducted on June 23, 2009. Fisher explained that new residents are provided with a list of rules and can be terminated for various reasons, including disruptive behavior. She said that, the week before Chames arrived, she had implemented a new rule relating accountability for job searches. Under the new rule, residents were only permitted to visit employers that the House had verified were hiring. Fisher addressed the employment skills group because many of the residents were not happy about the rule change. Fisher testified that, after she explained the new rule to the group, Chames and another resident said it was not fair. Chames repeatedly interrupted her and she told him, "[y]ou have two choices. You can do what I tell you to do, or you can pack your stuff and you can leave." Fisher testified that Chames had been standing up, and that as she left, Chames "was calling after me and ran after me, or came toward me. I don't know if he ran. . . . All I know is I turned and he was right there." She said that she felt threatened by his behavior, and she added that she was "not used to any resident approaching me in such a swift and hyped-up manner." Fisher then told him to pack his belongings and leave. She explained that he was not swearing or yelling, but that his voice was aggressive.

Chames also testified, denying that he had acted improperly. Chames stated that he had been through the orientation process and knew that he could be terminated for disruptive behavior. He stated that he knew about the rule change. When Fisher asked for comments, he raised his hand. Chames testified that he told Fisher that, just because a job was not posted, it "doesn't necessarily mean that if I was to go to that job and put in an application and present myself properly, that they won't necessarily hire me." Chames then told Fisher that "you're punishing everybody else for

-3-

something that other people are doing." Chames claimed that she terminated him at this point, turned around and walked out, and he approached her at that time.

The magistrate judge credited Fisher. Accordingly, the magistrate judge found that Chames had violated the terms of his supervised release and recommended that Chames be sentenced to ten months' imprisonment with no supervised release to follow.

Chames filed objections. He relied on "new evidence"–a copy of the security video tape of the employment skills meeting at the Dismas House that had not been presented to the magistrate judge– which he claimed contradicted Fisher's testimony and demonstrated that his termination was unjustified.

The district court reviewed the video and found Fisher to be credible.[1] The district court found that Chames's behavior was a sufficient reason for his termination and that Chames had not successfully completed the treatment program. The district court also noted that Chames had been given several opportunities to comply with supervised release conditions and had failed every time. The court held that "[Chames's] continued non-compliance with release conditions, as testified to by Ms. Fisher, compell[ed] the Court to conclude that his supervised release should be revoked, and no further supervised release be imposed." The district court therefore adopted the magistrate judge's recommendations, found that Chames had violated the terms of his supervised release, and sentenced Chames to ten months' imprisonment with no supervised release to follow.

On appeal, Chames argues that the Government failed to prove by a preponderance of the evidence that he violated the conditions of his supervised release because the security video

---

[1]The district court noted that the CD did not contain the audio portion of the meeting. This Court likewise lacks the audio portion of the meeting.

discounts Fisher's version of events. Second, Chames contends the district court violated his Fifth Amendment due process rights by considering his prior violations when determining whether he violated his conditions of release at Dismas House.

## II. Analysis

This court reviews a district court's decision to revoke supervised release for abuse of discretion, "giving fresh review to its legal conclusions and clear-error review to its fact findings." *United States v. Kontrol*, 554 F.3d 1089, 1091-92 (6th Cir. 2009) (internal citations omitted).

As noted, Chames challenges the district court's revocation of his supervised release. As an initial matter, we hold that this argument is waived. We have stated on more than one occasion that a party "cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course." *United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002) (quoting *United States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990) (internal quotation marks omitted)). *See also United States v. Olano*, 507 U.S. 725, 732-33 (1993) (stating that waiver is the "intentional relinquishment or abandonment of a known right," and renders such rights unreviewable). Chames agreed at the April 28, 2009 revocation hearing that, if he failed to successfully complete the treatment program at Dismas House, he would be sentenced to ten months' imprisonment. And Chames acknowledged this at the evidentiary hearing before the magistrate judge.

Having said that, we will review for plain error "when the interests of justice demand otherwise." *Aparco-Centeno*, 280 F.3d at 1088. Such is not the case here, notwithstanding Chames's unsupported assertion that it was implicit that any termination would be with just cause.

Chames claims that the security video contradicts Fisher's testimony and establishes there was no just cause for his termination. Specifically, he says the video reflects that he did not stand up at any time during the meeting while Fisher was in the room and that he did not approach her in a "swift and hyped-up manner," as she claims in her testimony.

Chames's claim is without merit. Fisher's description of Chames's behavior is consistent with the video recording. Fisher stated that Chames did not attempt to grab her and yelled after her. While it appears from the video that Chames did not actually stand up until Fisher turned to leave, it does not matter. Even if Fisher's recall of this fact is incorrect, the video shows that Chames challenged her during the meeting and stood and followed her as she turned to leave, while the others remain seated. Chames's allegation that Fisher was "in an admitted bad mood" is not supported by the record. In short, the Government met its burden through Fisher's testimony, and the transcript and video recording easily support the district court's determination to credit Fisher's version of events over Chames's.

Chames further complains that his due process rights were violated because the district court considered his prior violations in determining whether he violated the conditions of his supervised release. The district court's consideration of this evidence was not improper. The Federal Rules of Evidence do not apply to supervised release revocation hearings. *See* Fed. R. Evid. 1101(d)(3) (stating that the Rules do not apply to "proceedings . . . [for] granting or revoking probation"); *United States v. Frazier*, 26 F.3d 110, 113 (11th Cir. 1994) (holding that by analogy Rules do not apply to supervised release revocation proceedings); *see also* U.S.S.G. § 6A1.3(a) (providing that a sentencing court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial"); 18 U.S.C. § 3661 (stating that "[n]o limitation shall be placed

on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the Untied States may receive and consider for the purpose of imposing an appropriate sentence."). In any event, Chames denied that he was disruptive or threatening. Thus, evidence of Chames's prior violations was properly used to attack his credibility. *See, e.g., United States v. Markarian*, 967 F.2d 1098, 1103 (6th Cir. 1992) ("We have repeatedly insisted that when defendants testify, they must testify truthfully or suffer the consequences . . . . It is essential, therefore, to the proper functioning of the adversary system that when a defendant takes the stand, the government be permitted proper and effective cross-examination in an attempt to elicit the truth.") (internal quotation marks and citation omitted).

Finally, Chames's contention that the district court violated his due process rights because it did not give him an additional hearing on his objections to the magistrate judge's report is also without merit because the district court did what Chames asked it to do–review the video recording.

### III. Conclusion

In sum, this appeal is entirely without merit. The judgment of the district court is AFFIRMED for the reasons stated herein, as well as the thorough opinions of the district court and the magistrate judge.