NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0488n.06

No. 18-3134

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Sep 28, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| DARNELL D. OWENS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:    BATCHELDER, GIBBONS, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.  Darnell Owens appeals the district court's decision revoking his supervised release and imposing a 24-month prison sentence, followed by a three-year term of supervised release.  Owens first argues that the district court improperly relied on his history of drug trafficking to conclude that he had engaged in drug trafficking while on supervised release.  Although the district court briefly but explicitly considered Owens' prior drug-dealing history in concluding that Owens had violated his supervised release conditions, such consideration does not warrant reversal.  There was independently sufficient evidence that Owens was involved in drug dealing while being driven by his son at 1:30 a.m. in a high-crime area, and Owens' drug-dealing history logically undermined the believability of Owens' contemporaneous statement to police that he was just out "looking for family."  As the government concedes, however, the district court improperly imposed a new three-year term of supervised release without reducing that term by the 24-month prison term it imposed, which 18 U.S.C. § 3583(h) requires.  Accordingly, remand is

necessary for the limited purpose of entering a corrected judgment decreasing the length of supervised release.

In 2011, Owens was convicted of being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g). He was ultimately sentenced to 78 months' incarceration, with credit for time served, followed by a four-year term of supervised release. Owens began serving his supervised release on May 8, 2017.

Two months later, on July 17, 2017, Officer Zackary McGranahan was on routine patrol at 1:30 a.m. in Farrell, Pennsylvania, when he noticed a car stop for an unusually long period of time at the intersection of Norman Boulevard and Hamilton Avenue. Owens was in the front passenger seat, and his son, Anthony Lee Leville, was the driver. Because the suspicious vehicle was in a high-crime area, McGranahan followed it for several blocks until it turned into a driveway in the neighborhood, but because he did not have probable cause to stop the vehicle, McGranahan continued his patrol. Minutes later, McGranahan received a call from his dispatcher about a report of a suspicious person at the same house where Owens and Leville's car had just stopped, and when McGranahan returned to the house he saw two men standing in the driveway.

According to McGranahan's testimony, Owens and Leville claimed that they were in the area "visiting family" or "looking for family." The owner of the house told McGranahan that he did not know Owens or Leville and that he was nervous for his safety. When McGranahan ran Owens' ID, he learned that Owens was on federal supervised release, and he called Owens' probation officer. Owens' probation officer explained Owens' history of selling drugs and carrying firearms, and he told McGranahan that Owens had not been reporting to him. McGranahan then detained Owens and Leville, and he requested assistance from a canine unit.

The canine unit arrived and performed a drug sweep of the vehicle. The dog alerted officers to the scent of drugs, and during a search of the vehicle, officers found a bag of marijuana and 147 pills in the glove box in front of where Owens had been sitting. The pills, which were packaged for resale, appeared to be oxycodone, but later testing revealed that they were actually cyclopropyl fentanyl. Owens and Leville were arrested, and during a search incident to arrest, officers found two cellphones and $1,662 in cash on Owens. Owens was charged with numerous drug-related offenses, but the evidence obtained during the stop was ultimately suppressed, and the charges against Owens were dismissed.

However, a violation report outlining Owens' conduct was filed with the district court, and the district court held a revocation hearing on January 29, 2018. McGranahan testified about the July 17 stop, and U.S. Pretrial Services Probation Officer Sharon Worlds also testified. Worlds testified that Owens was living in Pittsburgh, Pennsylvania, following his release from prison and that Owens worked as a kitchen helper at the Grand Concourse Restaurant, making approximately minimum wage. Owens maintained that he had a second job as a kitchen helper at the Cheesecake Factory in Pittsburgh, but Worlds testified that she was not aware of Owens' secondary employment.

Owens put forward no evidence or testimony to rebut the government's case. While Owens' attorney conceded that the circumstances surrounding the July 17 stop appeared "suspicious," he argued that it was "equally likely that the evidence could belong to the driver of the vehicle as it may belong to the passenger of the vehicle." The district court, however, concluded that it was "abundantly clear" that Owens had engaged in drug trafficking in violation of the terms of his supervised release:

> First of all, the defendant is a passenger in the vehicle. The
> vehicle itself – drugs are contained in the glove box, the glove

compartment of the vehicle.  Perhaps the most compelling reasons as to why the defendant, at least in my view, has violated his supervision, why it is the circumstances would lead to the fact that he is the owner of the drugs and the distributor or seller of the drugs is the fact that he has such a large sum of money on his person.

$1,600, two cell phones. Let's put this into context.  The defendant was placed on supervision, supervised release, according to the report on I believe—we can put the dates on the record here very clearly so we don't have any confusion.

Supervision commenced on May 8, 2017.  So this event occurred on July 17, 2017.  This defendant had only been on supervision again for a little more than two months with such a large sum of money, along with the combination of two cell phones, makes it abundantly clear to me that he has returned unfortunately to drug trafficking activity.

*And candidly, the other aspect of the matter is the defendant's prior history and his record.  He has a long record of drug trafficking along with other violent-related offenses.*

So I do find by a preponderance of the evidence that he is once, again, unfortunately, returned to the activities that put him— in many ways has created problems for him in the past.

(Emphasis added.)   The italicized two sentences provide the entire basis for Owens' present challenge to his revocation.

In the same hearing the court proceeded to hear first from defense counsel and then from Owens himself regarding punishment for the violation.  Defense counsel pointed out that Owens "denied that he was involved in drug trafficking activity."  Defense counsel also asserted that the money on Owens' person was from work at two jobs, and that Owens removed his earnings from his bank "because somebody recently . . . had access to his pin number."  Owens was permitted to give a statement at this point, and among other things, he sought to refute the court's determination that he had returned to drug trafficking activity:

THE DEFENDANT: . . . All of this right here is just a big misunderstanding.  I'm in the car with my son.  I had him come get

me. I am looking for my sister's address. She just moved. The two phones this officer claims he found, one of them phones is broken and they were in my bag. The other one is my phone that I used. The money I took off of my card, because the person had my pin number.

There is no way possible, Your Honor, I did anything of any sort of drugs or anything. I've been doing everything you asked me to take granted of, Your Honor.

THE COURT: So you're going to tell me your son is the one who has those drugs and you're going in the car.

THE DEFENDANT: Your Honor, it's my son's car. I'm not going to throw nobody under the bus, but, Your Honor, I have had no drugs. I just maxed out of the halfway house. I am working. I'm a chef downtown. I'm working.

THE COURT: So you're out at 1:30 in the morning?

THE DEFENDANT: Yes, sir. I have kids in Farrell, Pennsylvania. I leave my kids to go to my sister's. They tell me she moved, but I don't have the address. I just know the street, and we headed to that area.

THE COURT: So you're trying to find your sister at 1:30 in the morning within a high crime, drug-infested area?

THE DEFENDANT: I don't know nothing about that area, Your Honor. I am from Ohio.

. . .

THE COURT: With $1,600 in your pocket. And you've got drugs, the most deadly type of drugs in the community in the front -- in the glove box, and you think all those circumstances, this is just an innocent sort of, "Well, we're trying to find my sister, and I'm not dealing drugs. You know, I've just been saving my money. I'm just carrying all this cash," making minimum wage.

What's the minimum wage, about $8.20 an hour?

THE DEFENDANT: I made 10:50 at Cheesecake Factory and I made 12:50 at Grand Concourse.

THE COURT: That doesn't come to match what we've been told. There's a lot of other things we've been told that don't match here, we need to delve into.

I'm not going to delve into the alleged domestic violence and the other source of drug trafficking, but I'm sorry, with all due respect, the circumstances and all of the circumstances that are occurring on that evening in question, clearly makes it apparent to me that, unfortunately, you've decided to make a quick, easy buck.

. . .

THE DEFENDANT: Your Honor, the picture is already painted of me having a background history. This is what keeps coming up. I moved on from my background history,

Your Honor. I'm a new man. And you gave me the opportunity and I have been doing just that.

But at the end of the day, Your Honor, I respect your decision. Everything I'm just telling you that this is what it is, what I just told you.

THE COURT: I'm sorry. At the end of the day, you are – you are trying to point the finger at your son.

You've got all these drugs right in the vicinity of where you're sitting and you've got all the accoutrements of the drug trade, and I don't buy that in two short months, you've been able to save up $1,600 in cash, and you're carrying it around as I've already described it. I just don't buy it. It doesn't fit. It doesn't make sense.

In light of your history, and I am sorry, I hope you turn your life around. I don't believe it. It's unfortunate. Maybe I've just become cynical.

Based on its finding that Owens committed a Grade A supervised release violation and Owens' criminal history category of V, the district court calculated Owens' advisory guidelines range as 30–37 months' imprisonment. But because Owens' original offense of conviction was a Class C felony, the maximum prison term that he could be sentenced to was 24 months, and his maximum term of supervised release was three years, *see* 18 U.S.C. § 3583(e)(3), less any prison

term the court imposed, *see* 18 U.S.C. § 3583(h). After reviewing the relevant sentencing factors, the court sentenced Owens to the maximum 24 months' imprisonment, plus three years of supervised release.

Owens does not challenge the district court's reliance on his criminal history at the sentencing portion of the revocation hearing, and it is easy to see why not. At that point, Owens himself had made a statement with factual assertions, and it is well-established in our law that a factfinder may consider a witness's prior convictions when evaluating the credibility of a testifying witness. *Cf.* Fed. R. Evid. 609(a)(1)(B) ("evidence of a criminal conviction . . . must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant"). Instead, Owens challenges the court's reliance on his prior criminal history—before he made his statements—to support the court's factual finding by a preponderance of the evidence that he violated the terms of his supervised release. The argument can be taken in two possible ways, and each can be refuted.

The first way of understanding Owens' argument is that without the prior criminal history consideration, there was not sufficient evidence to support the finding of drug trafficking on the night in question. That argument is suggested by Owens' reliance on a Ninth Circuit opinion for the proposition that a district court "must be cautious not to use the releasee's prior crimes to find [that] the releasee violated the terms of supervised release where there is no reliable evidence the releasee did so." *United States v. Perez*, 526 F.3d 543, 550 (9th Cir. 2008). In *Perez*, the Ninth Circuit found that the district court relied solely on prior bad acts by Perez instead of evidence in the case before it. *Id.* But in Owens' case there was clearly sufficient evidence to support finding a supervised release violation apart from the prior criminal history. While deciding whether Owens had violated supervised release, but before discussing Owens' criminal history, the court

observed that Owens was the passenger in a vehicle that contained a significant quantity of dangerous drugs, and that the drugs were in the glove box in front of where Owens had been sitting. The district court then explained that "[p]erhaps the most compelling reason[] as to why [Owens] . . . has violated his supervision, why it is [that] the circumstances would lead to the fact that he is the owner of the drugs and the distributor or seller of the drugs is the fact that he has such a large sum of money on his person." Because Owens worked a minimum wage job and had been on supervised release for only a little over two months, the district court concluded that the fact that Owens had $1,662 dollars in cash on his person suggested that he was engaged in drug trafficking. That consideration, in combination with the drugs found near where Owens had been sitting and the fact that Owens had two cellphones on him, led the district court to conclude that "it [is] *abundantly clear* to me that [Owens] ha[d] returned unfortunately to drug trafficking activity." (emphasis added).

The other way of taking Owens' argument is that no matter how much additional evidence there was, consideration by the factfinder of a defendant's prior criminal history violates the defendant's rights. The source of such a rule in the context of this case is questionable for three reasons. First, it would break new constitutional ground to hold that constitutional due process precludes the admission of prior convictions as propensity evidence, and we do not do so today. We have observed in the habeas context, for instance, that there "is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence," *see Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003), and other circuits have recognized that Federal Rule of Evidence 414, which explicitly allows for the

admission of certain propensity evidence, does not violate due process, *see United States v. LeMay*, 260 F.3d 1018, 1031 (9th Cir. 2001).[1]

Second, Owens has not challenged the court's consideration of his prior drug dealing history as violating the rules of evidence. His criminal history was properly part of the record before the district court, and in any event, the rules of evidence do not apply in revocation hearings. *See United States v. Chames*, 376 F. App'x 578, 581 (6th Cir. 2010) (per curiam) (citing Fed. R. Evid. 1101(d)(3) and *United States v. Frazier*, 26 F.3d 110, 113 (11th Cir. 1994)); *see also*, *Perez*, 526 F.3d at 550.

The only thing left is the policy underlying Federal Rule of Evidence 404(b), which puts limits on the admissibility of evidence of prior crimes to show propensity. In *Perez*, for instance, the Ninth Circuit looked at the logic underlying the rules of evidence. 526 F.3d at 550. But the logic of the evidentiary rules did not require that the district court close its eyes to Owens' record. Even at the conviction portion of the hearing, the court was evaluating the believability of Owens' statements to the police as to what he was doing in the area. Moreover, one of the fundamental reasons for the general inadmissibility of prior criminal acts under Rule 404(b) is to forestall a jury's tendency to convict for the prior acts. *See Wynne v. Renico*, 606 F.3d 867, 874 (6th Cir.

---

[1] Owens cites a Ninth Circuit case for the proposition that "admission of prior bad acts violates due process 'if there are *no* permissible inferences the jury may draw from the evidence,'" quoting *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). The Ninth Circuit upheld the conviction in that case, and a fuller quote shows the irrelevance of that case to Owens':

> Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not; we must rely on the jury to sort them out in light of the court's instructions. Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must "be of such quality as necessarily prevents a fair trial." . . . Only under such circumstances can it be inferred that the jury must have used the evidence for an improper purpose.

*Id.* (citations omitted). Here there was no jury, and no question of evidence admission. More to the point, consideration of evidence of prior crimes that undermines a defendant's credibility is not something that necessarily prevents a fair trial.

2010) (Martin, J., concurring) (citing *United States v. Phillips*, 599 F.2d 134, 136 (6th Cir. 1979)).

Such a concern is of course not warranted in the case of a nonjury trial, where the judge presumably

knows which crime is before the court. Finally, in the present case, the court's subsequent fuller

discussion of Owens' guilt (following Owens' allocution denying guilt) shows that the court did

not reason in a way that the evidentiary rules seek to forestall. There is no defensible basis left,

then, for requiring a new hearing to decide whether there was a supervised release violation.[2]

A limited remand is necessary, however, because the district court's 24-month sentence,

followed by three-year term of supervised release, exceeds the statutory maximum sentence.

Owens was originally convicted of being a felon in possession of ammunition, in violation of 18

U.S.C. § 922(g), a Class C felony, *see* 18 U.S.C. 3559(a)(3). Accordingly, the maximum term of

supervised release after imprisonment that Owens could have received was three years. *See* 18

U.S.C. § 3583(b)(2). However,

> [w]hen a term of supervised release is revoked and the defendant is
> required to serve a term of imprisonment, the court may include a
> requirement that the defendant be placed on a term of supervised
> release after imprisonment. The length of such a term of supervised
> release shall not exceed the term of supervised release authorized by
> statute for the offense that resulted in the original term of supervised
> release, *less any term of imprisonment that was imposed upon
> revocation of supervised release.*

18 U.S.C. § 3583(h) (emphasis added). Thus, after the court imposed a 24-month prison sentence,

Section 3583(h) required that the court reduce Owens' subsequent term of supervised release by

two years. *See United States v. Brown*, 639 F.3d 735, 737 (6th Cir. 2011). Put differently, Section

3583(b)(2) authorized the district court to begin its supervised-release calculations with a 36-

month maximum term, but once the court imposed a 24-month prison term, Section 3583(h)

---

[2] Owens cites *Murray v. Superintendent, Ky. State Penitentiary*, 651 F.2d 451, 453 (6th Cir. 1981), for the proposition that "it is unfair and violative of due process if evidence of other crimes is admitted without a limiting instruction." But of course no limiting instruction is required where there is no jury.

required the court to deduct 24 months from the original 36-month maximum, leaving a maximum, permissible supervised release sentence of 12 months. *Id.* Therefore, the three-year term of supervised release following Owens' 24-month prison sentence exceeds the statutory maximum sentence, and remand is necessary for the district court to enter a corrected judgment that complies with the statutory limits on supervised release prescribed by Section 3583. *See United States v. Jones*, 489 F.3d 243, 253–54 (6th Cir. 2007) (citing 28 U.S.C. § 2106 and *United States v. Moore*, 131 F.3d 595, 597–98 (6th Cir. 1997)).

According to Owens, however, *Jones* is distinguishable, and therefore a general remand is necessary. Owens argues that a remand will necessarily alter part of his sentence—"[Owens] will not serve two years in prison and three years of supervised release, as the district court ordered; he will serve some combination of time in prison and on supervised release totaling a maximum of three years"—based on his assertion that the district court here "expressed concern about maintaining supervision after Mr. Owens' release." But the portion of the hearing transcript cited by Owens simply does not support the conclusion that the district court was particularly concerned about maintaining supervision after Owens' release. In twelve paragraphs over three pages of hearing transcript, the court expressed its reasons for imposing the two-year maximum term of imprisonment; the three-year term of supervised release, in contrast, is mentioned in a single sentence. If the district court had been more concerned about maintaining supervision than incarcerating Owens, his argument would have more force, but that is simply not the case here. Thus, there is no reason not to conform our remand to the one ordered in *Jones*.

The district court's judgment is vacated, and the case is remanded for the limited purpose of entering an amended judgment that complies with the statutory limits on supervised release.