NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0509n.06

No. 18-5949

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Oct 10, 2019 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| DANIEL RAYMOND VAUGHN, | ) | COURT FOR THE EASTERN |
|  | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) |  |
|  | ) |  |

BEFORE:   BOGGS, SUHRHEINRICH, and WHITE, Circuit Judges.

SUHRHEINRICH, Circuit Judge.   After two[1] positive urinalysis tests for marijuana in a three-week period, the district court revoked Defendant Daniel Raymond Vaughn's supervised release and sentenced him to twenty-one months of confinement.  Vaughn argues that this was in error because the second positive test resulted not from a new use but rather from residual elimination of marijuana from his body from a prior use.  We AFFIRM.

**I.**

In 2009, Vaughn was convicted in the Middle District of Tennessee of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1).  The district court sentenced Vaughn to a guidelines range sentence of 100 months in prison, to be followed by a four-year term of supervised release.

---

[1] In actuality there were three positive urinalysis tests—on June 11, 2018, June 29, 2018, and July 2, 2018, but the district court based its second violation determination only on the July 2 positive test as a new use.

*Supervised Release.* Vaughn's term of supervised release began in 2015 and was originally due to expire on January 1, 2019. While on supervised release, he was forbidden from possessing controlled substances and from committing federal, state, or local crimes. He was also required to undergo periodic drug testing. On October 3, 2016, Vaughn tested positive for marijuana. In this circuit, use of a controlled substance equals possession, a federal crime. *United States v. Crace*, 207 F.3d 833, 835 (6th Cir. 2000). This makes a failed drug test a Grade B violation, USSG § 7B1.1(a)(2), which requires revocation of supervised release, *Crace*, 207 F.3d at 835 (citing 18 U.S.C. § 3583(g)). However, 18 U.S.C. §3583(d) returns some discretion to the district court, allowing it to consider "whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception . . . from . . . section 3583(g) when considering any action against a defendant who fails a drug test." *See Crace*, 207 F.3d at 835. Consistent with § 35831(d), the district court allowed Vaughn to continue on supervised release while attending outpatient substance-abuse treatment. On November 21, 2016, jurisdiction over Vaughn was transferred to the Eastern District of Kentucky. Vaughn was randomly tested ten times between October 2016 and June 2018 for illegal substances. All ten samples were negative for illegal drugs.

*First Positive Urinalysis.* Vaughn provided a urine sample on June 5, 2018, which was negative for marijuana. However, that sample was diluted, so Vaughn's probation officer asked for another drug screen, which Vaughn provided on June 11, 2018. That urine sample tested positive for marijuana, at a tetrahydrocannabinolic acid (THCA) level of 72 ng/mL.

On June 20, 2018, Vaughn's probation officer filed a supervised release violation report charging Vaughn with both use and possession of marijuana. Vaughn's initial appearance on these violations was June 26, 2018. He was released from custody at the end of the initial hearing,

pending outcome of the final supervised-release-revocation hearing, with the requirement that he submit to weekly urine screens. Vaughn was screened two times, registering a THCA level of 15 ng/mL on June 29, 2018, and 27 ng/mL on July 2, 2018.

Vaughn's final revocation hearing on the June 11 marijuana violation was held on July 13, 2018. The district court considered only the June 11 violation because the lab results on the more recent tests were not yet available. At this hearing, Vaughn admitted to using and possessing marijuana on June 11. During allocution, defense counsel explained Vaughn's marijuana use as prompted by grief for the loss of his sister and mother. Vaughn's sister was diagnosed with a terminal illness in October 2016 and died about a year later. Vaughn and his sister would visit their mother's burial site each year for their mother's birthday in June. June 2018 was the first year that Vaughn visited his mother's burial site after his sister passed away. Counsel observed that Vaughn "just didn't know how to deal with the grief," and chose the "familiar recourse" of marijuana on these occasions. Counsel stressed that "[i]f you look at [Vaughn's] history on release, the only two issues he's ever had with drugs are tied with specific instances of severe grief."

Vaughn echoed the same sentiment, explaining that he had "put . . . down" his former gang- and drug-related lifestyle, and that "the reason why I done it is just, you know, I lost my sister, my mother." He told the court that his "three-and-a-half years" on supervised release had "changed" him and that he was moving forward. The district court sentenced Vaughn to time served on the June 11 violation and ordered eighteen months of supervised release and eight weekends of intermittent confinement.

*Second Positive Urinalysis.* Three days later, on July 16, the probation officer received an interpretation letter from the toxicology lab, Alere Toxicology Services, indicating that the positive

marijuana test from July 2 was a "new use" (as opposed to residual elimination from a prior use symptomatic of "chronic use"). The characterization—chronic versus social—matters, because marijuana stays in the body longer if one is a chronic user. A "social user" is "an individual who smokes one marijuana cigarette per week." A chronic user refers to "an individual who smokes one or more marijuana cigarettes a day." A social user clears marijuana from his system in less than five days at a 15 ng/mL cutoff, whereas a chronic user may continue to release the drug into the urine for up to four weeks. The interpretation letter was provided by Michael Daggett, a toxicologist who had been filling in for Patricia Pizzo, Alere's Director of Toxicology, while Pizzo was on vacation. Daggett's interpretation letter was premised on the probation officer's characterization of Vaughn as a chronic user, but he concluded that there was a new use because the THC level in the July 2 test was higher that the THC level in the June 29 test.

This prompted Vaughn's probation officer to file a new violation report on July 23, 2018. A preliminary hearing before a magistrate judge was held on August 8, 2018. At the hearing, the United States conceded that the charged violation was premised only upon the positive test from July 2. The magistrate judge found probable cause to believe Vaughn had violated the terms of his supervised release and set a final hearing date.

Meanwhile, Pizzo offered an analysis different from Daggett's. In an interpretation letter dated August 8, 2018, she opined that "the results of the specimens collected on 6/29/18 and 7/2/18 appear to be residual elimination." She also relied on the chronic-user characterization. Contrary to Daggett's opinion, which concluded that the July 2 test was the result of a new use because the THC level had risen after the June 29 test, Pizzo explained that chronic users' THC levels commonly "shift[] up and down during the terminal elimination phase." Thus, according to Pizzo, the mere fact that the THC level has increased between the June 29 and July 2 tests could not

establish a new use in a chronic user. Pizzo's opinion, which Vaughn received on August 9, prompted Vaughn to file a motion seeking immediate release from custody because Alere had admitted that the July 16 report was incorrect. On August 10, 2018, the magistrate judge denied Vaughn's request for dismissal despite the new Alere report and set the matter for final hearing.

Pizzo's opinion prompted the United States to have Pizzo re-analyze the June 29 and July 2 positive tests while assuming Vaughn was only a social user. Based on a social-user status, Pizzo concluded in an August 29, 2018 interpretation letter that both positive tests should be considered new uses.[2]

At the final revocation hearing held on August 31, 2018, the United States, relying on Pizzo's August 29 interpretation letter, argued that Vaughn was a social user and had re-used marijuana at least once after the June 11 positive screen—on or before July 2. The district court agreed. Having determined that Vaughn violated the terms of his supervised release, the court revoked his supervised release and sentenced him to twenty-one months' imprisonment. Vaughn appeals.

## II.

## A.

Vaughn claims that the evidence did not establish that he was a social user of marijuana. Neither party disputes the methodology regarding marijuana elimination from the body; only the court's classification of chronic versus social user. If Vaughn is right, and he is properly classified as a chronic user, the July 2 positive drug test was not a violation of his supervised release conditions because it was not a new use but rather residual elimination of marijuana from the June 11 incident.

---

[2] Pizzo provided a virtually identical letter to Vaughn on August 27, 2018.

A district court is authorized to revoke a term of supervised release if it "finds by a preponderance of the evidence" that the defendant violated the terms of his release. 18 U.S.C. § 3583(e)(3). We review that decision for abuse of discretion. *United States v. Coleman*, 570 F. App'x 438, 440 (6th Cir. 2014). Factual findings in this setting are reviewed for clear error. *United States v. Kontrol*, 554 F.3d 1089, 1091-92 (6th Cir. 2009).

The district court based its violation determination only on the July 2 positive test as a new use, which was twenty-one days after Vaughn's admitted used on June 11. Vaughn faults the district court's finding because Pizzo testified that "[y]ou can't get a usage type from a urine drug screen test," and Pizzo conceded that she did not have any information about his pattern of marijuana use. Vaughn points out that the probation officer, who was in a position to know, characterized Vaughn's use as chronic in his request for a report from Alere.

Nevertheless, sufficient evidence supports the district court's finding that Vaughn was a social user of marijuana, not a chronic user, for the purpose of assessing his follow-up positive drug tests. First, Vaughn had not tested positive for over twenty months while on supervised release, an important circumstantial fact. The testing was random. As the district court reasoned, it was unlikely that Vaughn would risk using marijuana on a daily basis. Second, Vaughn and his attorney made statements at the July 13 revocation hearing for the June 11 violation that depicted Vaughn's use on June 11 (as well as October 2016) as an isolated episode induced by grief, which the district court credited as consistent with social use. The district court reasonably relied on Vaughn's self-report regarding his marijuana usage. *See United States v. Chames*, 376 F. App'x 578, 581 (6th Cir. 2010) (per curiam) (stating that the "Federal Rules of Evidence do not apply to supervised release revocation hearings," so a district court may properly consider prior violations). Contrary to his assertion, Vaughn's explanation for his June 11 use also spoke to how often he

smoked marijuana.  Nor did the district court err in refusing to credit the probation office's casual selection of the "chronic" box when seeking reports from Alere, since the probation officer testified that the choice had nothing to do with Vaughn's actual use history (but simply assumed "the worst-case scenario").  Third, Pizzo testified that the level of THCA in the June 11 sample, 72 ng/mL, was inconsistent with chronic use, which is "normally" in the range of 600-700 ng/mL for chronic users, up to as high as 10,000 ng/mL.  Fourth, the June 5 sample was negative for marijuana.  Although it was a dilute sample, Pizzo pointed out that it was unlikely that a chronic user could provide a negative sample.  The district court expressly credited Pizzo's testimony in its factual findings.

Vaughn continues to argue that he should be considered a chronic user for purposes of the July 2 test, because Pizzo acknowledged that a person could become a chronic user in six days or less—the amount of time between June 5 and June 11.  In addition to the reasons stated above, the district court rejected this "logic" based on "what was happening at the time in June":  that Vaughn was "suddenly being tested again," and knew that he was going to be tested again.  To the court's mind, it was "contrary to common sense" that Vaughn would "suddenly become a chronic user during that period of time."

With the proper finding that Vaughn was a social marijuana user, the July 2 positive urinalysis result supports the conclusion that he used marijuana on at least one new occasion after June 11 in violation of the conditions of supervised release.  Because the evidence was sufficient to establish use, and our circuit equates use with possession, the evidence also established the Grade B violation of possession.  *See United States v. Godman*, 27 F. App'x 484, 485 (6th Cir. 2001).[3]

---

[3] Vaughn contends that because he did not admit to using marijuana after June 11, 2018, Sixth Circuit precedent equating admitted drug use with possession does not apply.  However, these cases do not base the "use equals

**B.**

Vaughn also argues that his sentence is procedurally and substantively unreasonable. He argues that his sentence is procedurally unreasonable because it was based on a clearly erroneous fact—that he was a social user of marijuana on July 2. *See Gall v. United States*, 552 U.S. 38, 51 (2007) (holding that selecting a sentence on clearly erroneous facts is a procedural error). However, as just discussed, we have concluded that the district court's determination was not a clearly erroneous finding of fact.

Vaughn claims that his sentence was substantively unreasonable "because it was far greater than necessary to meet the needs of [18 U.S.C.] § 3553." He notes that on July 13 the district court saw fit to impose a sentence of time served and extended his supervised release with the added condition that he serve eight weekends of intermittent confinement, despite knowledge of the June 29 and July 2 positive marijuana tests. But, as the United States points out, on July 13, there had been no interpretation as to whether those positive tests were the result of new or residual use. By August 29, however, the district court found an additional violation and had surmised that it had been "tricked," that "the representations that were made turn out to be false because . . . this defendant continued to use marijuana . . . prior to the sample being collected on July the 2nd of 2018." The district court did not abuse its discretion in imposing a bottom-of-the-guidelines sentence for an additional violation and Vaughn's breach of the court's trust. *See* United States Sentencing Commission Guidelines Manual, Ch. 7, Pt.A(3)(b), intro. comment. (Nov. 2016). (stating that "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the

---

possession" rule on the defendant's admission of use. *See, e.g., Godman*, 27 F. App'x at 485; *Crace*, 207 F.3d at 836-37; *United States v. Hancox*, 49 F.3d 223, 224-25 (6th Cir. 1995); *see also United States v. Price*, 901 F.3d 746, 751 (6th Cir. 2018) (stating that "[e]ven if" the defendant had not admitted use of cocaine, revocation of supervised release was proper where there was "no dispute that [the defendant] tested positive for" cocaine).

criminal history of the violator"); *see also United States v Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc) (explaining that we afford a presumption of reasonable to within -guidelines sentences).

## III.

For the foregoing reasons, we AFFIRM Vaughn's supervised release revocation and sentence.